No. 22-36014

*Pro Bono*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KENT GLEN WILLIAMS,

*Plaintiff-Appellant,*

v.

LANDON FOX, Guard,

*Defendant-Appellee.*

_____

On Appeal from the U.S. District Court for the District of Idaho
No. 1:16-cv-143 (Hon. David C. Nye)

_____

**OPENING BRIEF OF APPELLANT
KENT GLEN WILLIAMS**

_____

M. PATRICK YINGLING
JOHN R. CASEY III
LARISA B. KUPINSZKY GAMBERG
REED SMITH LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
Tel: (312) 207-1000
mpyingling@reedsmith.com
jcasey@reedsmith.com
lkupinszkygamberg@reedsmith.com

*Counsel for Appellant*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION .........................................................4

ISSUES PRESENTED .................................................................................4

CIRCUIT RULE 28-2.7 STATEMENT OF PERTINENT PROVISIONS..........5

STATEMENT OF THE CASE ...................................................................6

    A.    Mr. Williams submitted grievances that Deputy Fox refused to process because the grievances had disrespectful language.................................................................................6

    B.    Deputy Fox relied on an unconstitutional jail policy that allowed deputies to refuse to process grievances for disrespectful language.................................................8

    C.    Mr. Williams sued Deputy Fox for violation of his First Amendment right to petition.........................................10

    D.    The district court initially granted summary judgment to Deputy Fox. ....................................................................11

    E.    This Court vacated the summary judgment ruling and remanded for further proceedings. .................................12

    F.    After this Court ruled, the district court denied Mr. Williams reimbursement for his $505 appellate filing fee..........13

    G.    At trial, Deputy Fox admitted to refusing to process the grievances because the grievances contained disrespectful language.................................................................................14

H. The district court declined to instruct the jury on the law prohibiting officers from refusing to process grievances for disrespectful language....................................................................15

I. The district court's verdict form asked the jury whether Mr. Williams's grievances were "legitimate" and not whether they were "nonfrivolous."....................................................................17

J. Based on a *sua sponte* qualified immunity ruling and the jury's answers on the verdict form, the district court granted judgment for Deputy Fox....................................................19

K. Mr. Williams sought post-trial relief, which the district court denied....................................................................................22

SUMMARY OF ARGUMENT .............................................................................22

STANDARD OF REVIEW.....................................................................................26

ARGUMENT...........................................................................................................26

I. This Court should vacate the judgment and remand for a new trial on Mr. Williams's right-to-petition claim. ...................................26

A. The district court erred in determining that Deputy Fox was entitled to qualified immunity. .............................................27

1. The district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule................................................27

2. The right to use disrespectful language in a jail grievance and have it processed is clearly established. ...30

B. The district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison grievance.............................................................................37

C. The district court erred in asking the jury whether Mr. Williams's grievances were "legitimate." ....................................40

    1. The word "legitimate" is not the equivalent of the word "nonfrivolous." ............................................................41

    2. Because the word "legitimate" was used in the unconstitutional prison policy, use of the word "legitimate" for the jury question was improper. .............44

D. The district court did not rely on the jury question on whether Deputy Fox adhered to a policy, and neither can Deputy Fox. ...................................................................................47

II. This Court should direct the district court to award Mr. Williams his $505 filing fee for the prior appeal. ....................................................49

CONCLUSION ...............................................................................................50

STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ...........................................................................................52

CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................................53

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING............................54

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011)..................................................................................13

*Bradley v. Hall,*
64 F.3d 1276 (9th Cir. 1995)..............................................................23, 31

*Brodheim v. Cry,*
584 F.3d 1262 (9th Cir. 2009)................................................................*passim*

*Carey v. Nev. Gaming Control Bd.,*
279 F.3d 873 (9th Cir. 2002)...................................................................48

*Chacon v. Diaz,*
No. EDCV 20-1898-JWH (KS), 2020 U.S. Dist. LEXIS 238061
(C.D. Cal. Nov. 25, 2020) .......................................................................34

*Christopher v. Harbury,*
536 U.S. 403 (2002)..................................................................................41

*Clements v. Barden Miss. Gaming, L.L.C.,*
373 F. Supp. 2d 653 (N.D. Miss. 2004)..................................................42

*Dimick v. Schiedt,*
293 U.S. 474 (1935)..................................................................................39

*Garcia v. Diaz,*
No. 5:20-cv-02564-FLA (MAA), 2021 U.S. Dist. LEXIS 199501
(C.D. Cal. Aug. 24, 2021) ........................................................................34

*Gorromeo v. Zachares,*
15 F. App'x 555 (9th Cir. 2001) ..............................................................48

*Grossman v. City of Portland,*
33 F.3d 1200 (9th Cir. 1994)..........................................................48

*Hebbe v. Pliler,*
611 F.3d 1202 (9th Cir. 2010)........................................................41

*Jackson v. Sullivan,*
692 F. App'x 437 (9th Cir. 2017) ...................................................41

*Johnson v. Walton,*
558 F.3d 1106 (9th Cir. 2009)........................................................26

*Jones v. Williams,*
791 F.3d 1023 (9th Cir. 2015)........................................................40

*Karam v. City of Burbank,*
352 F.3d 1188 (9th Cir. 2003)........................................................42

*Lewis v. Casey,*
518 U.S. 343 (1996).......................................................................41

*In re Mann,*
907 F.2d 923 (9th Cir. 1990)..........................................................42

*McConnell v. Critchlow,*
661 F.2d 116 (9th Cir. 1981)..........................................................42

*Merchant v. Corizon Health, Inc.,*
993 F.3d 733 (9th Cir. 2021)..........................................................26

*Miller v. Sanchez,*
No. CV 20-06-GW (KK), 2020 U.S. Dist. LEXIS 17170 (C.D.
Cal. Feb. 3, 2020)..........................................................................34

*Mitchell v. Gonzales,*
2023 U.S. Dist. LEXIS 83817 (E.D. Cal. May 11, 2023) ...................23, 32, 35

*Morales v. Fry*,
873 F.3d 817 (9th Cir. 2017)........................................................................39

*N. L. v. Credit One Bank, N.A.*,
960 F.3d 1164 (9th Cir. 2020)....................................................................26

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001)........................................................................26

*Richey v. Dahne*,
733 F. App'x 881 (9th Cir. 2018) ...................................................23, 31, 32, 35

*Richey v. Young*,
2021 U.S. Dist. LEXIS 52425 (W.D. Wash. Mar. 19, 2021)...............23, 32, 35

*Smith v. Arkansas State Highway Emp., Loc. 1315*,
441 U.S. 463 (1979)........................................................................................34

*Thornton v. Neotti*,
472 F. App'x 757 (9th Cir. 2012) ....................................................................41

*Torres v. City of Los Angeles*,
548 F.3d 1197 (9th Cir. 2008)........................................................................26

*United States EEOC v. Robert L. Reeves & Assocs.*,
262 F. App'x 42 (9th Cir. 2007) .....................................................................42

*United States v. Thrasher*,
483 F.3d 977 (9th Cir. 2007)........................................................................27

*Valley Hosp. Med. Ctr., Inc. v. NLRB*,
93 F.4th 1120 (9th Cir. 2024)........................................................................27

*Walker v. Berkeley*,
951 F.2d 182 (9th Cir. 1991)........................................................................39

*Williams v. Fox*,
840 F. App'x 226 (9th Cir. 2021) ...............................................................2, 12

**Statutes**

28 U.S.C. § 1291.................................................................................................4

28 U.S.C. § 1331.................................................................................................4

28 U.S.C. § 1915(g)...........................................................................................37

28 U.S.C. § 1915A .......................................................................................36, 37

42 U.S.C. § 1983......................................................................................1, 4, 10

**Rules**

Fed. R. App. P. 39(d)(1) ..........................................................13, 25, 50

Fed. R. App. P. 39(e)..............................................................................*passim*

Fed. R. Civ. P. 49...............................................................................19, 40

Fed. R. Civ. P. 50.......................................................................................22

Fed. R. Civ. P. 59.......................................................................................22

## INTRODUCTION

This is a First Amendment right-to-petition case. The claim at issue is based on the settled principle that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). In 2016, when Plaintiff Kent Williams was incarcerated at the Ada County Jail, he submitted multiple grievances that Deputy Landon Fox refused to process because, according to Deputy Fox, the grievances contained disrespectful language. Mr. Williams sued Deputy Fox under 42 U.S.C. § 1983 for violation of his First Amendment right to petition.

At trial in this case, Deputy Fox admitted to refusing to process Mr. Williams's grievances because they contained disrespectful language, and the jury expressly found that "the language of the grievances was a substantial or motivating factor or reason that Fox refused to accept process Grievance 1 and/or 2." And yet, the district court entered judgment for Deputy Fox on Mr. Williams's right-to-petition claim because, according to the district court, (1) Deputy Fox was entitled to qualified immunity; and (2) the

jury answered "No," to a special verdict question about whether Mr. Williams's grievances were "legitimate." The district court's decision was incorrect—for multiple independent reasons.

*First*, *this Court* addressed the issue of qualified immunity when it reversed the district court's earlier summary judgment ruling for Deputy Fox, which was based in part on the district court's view that Deputy Fox was entitled to qualified immunity. *See Williams v. Fox*, 840 F. App'x 226, 227 (9th Cir. 2021). With its later qualified immunity ruling, the district court violated the mandate rule, which jurisdictionally bars district courts from revisiting matters that this Court has decided. In any event, the right to have a nonfrivolous jail grievance processed—even when it contains disrespectful language—is clearly established, and the district court erred in holding otherwise.

*Second*, the district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison/jail grievance. The district court reasoned that this was "an issue for the jury to decide," but that is incorrect. Courts determine the law; juries determine the facts.

Because the jury was not instructed that the First Amendment protects disrespectful language in a prison grievance, the jury lacked the proper understanding of the law needed to address many of the questions on the verdict form, including the question about whether Mr. Williams's grievances were "legitimate."

*Third*, the district court erred in asking the jury whether Mr. Williams's grievances were "legitimate." The standard for whether a prisoner's petition is protected by the First Amendment is whether the petition is "nonfrivolous" in contrast to "frivolous." The word "legitimate" does not embody the same low bar as "nonfrivolous." The jury was led to believe that Mr. Williams only had a viable right-to-petition claim if he had something like a *winning* grievance under the law, in contrast to a mere *nonfrivolous* grievance.

Also, this Court should direct the district court to award Mr. Williams his $505 filing fee for his prior successful appeal of the summary judgment ruling. The district court denied Mr. Williams's motion for reimbursement of his filing fee for his prior successful appeal, reasoning that Mr. Williams "did not file his request in the appropriate court." The district court

overlooked Federal Rule of Appellate Procedure 39(e), which provides that "[t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: … the fee for filing the notice of appeal."

In sum, as detailed below, this Court should reverse the district court's judgment and remand for a new trial. The Court should also direct the district court to order the reimbursement of Mr. Williams's appellate filing fee from his earlier successful appeal.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because Mr. Williams filed this suit pursuant to 42 U.S.C. § 1983. (2-ER-170)

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because Mr. Williams took a timely appeal (2-ER-38) from a final judgment of the district court. (1-ER-19; 1-ER-18; 1-ER-2)

## ISSUES PRESENTED

Mr. Williams presents the following issues:

1.     Did the district court incorrectly hold that Deputy Fox was entitled to qualified immunity on Mr. Williams's right-to-petition claim? (Ruled on at 1-ER-23–31; *de novo* review).

2.     Did the district court incorrectly refuse to instruct the jury that the First Amendment protects disrespectful language in a prison's grievance? (Ruled on at 5-ER-644–646, Trial Tr. Vol. 3 at 436:4–438:8; *de novo* review).

3.     Did the district court incorrectly ask the jury to answer a question about whether Mr. Williams's grievances were "legitimate"? (Ruled on at 2-ER-76, Question No. 9; 5-ER-655–657, Trial Tr. Vol. 3 at 447:17–449:21; *de novo* review).

4.     Did the district court incorrectly deny Mr. Williams reimbursement of his $505 appellate filing fee? (Ruled on at 2-ER-132; *de novo* review).

**CIRCUIT RULE 28-2.7 STATEMENT OF PERTINENT PROVISIONS**

The following constitutional provision is pertinent to this appeal—U.S. Const., Amend. 1: "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances."

# STATEMENT OF THE CASE

**A.     Mr. Williams submitted grievances that Deputy Fox refused to process because the grievances had disrespectful language.**

In January 2016, Mr. Williams was an inmate at the Ada County Jail in Idaho. By that time, Mr. Williams had a history of being disciplined by authorities at the jail for using disrespectful language in grievances (3-ER-236, Trial Tr. Vol. 1 at 30:19–25; 3-ER-266, Trial Tr. Vol. 1 at 60:1–3; 3-ER-331–332, Trial Tr. Vol. 1 at 125:20–126:5; 6-ER-838–840) and complaining that the deputies' refusal to process his grievances violated his constitutional rights (6-ER-835-837; 3-ER-304–307, Trial Tr. Vol. 1 at 98:12–101:10; 4-ER-464–465, Trial Tr. Vol. 4 at 257:21–258:14). For example, on January 8, 2016, Mr. Williams filed a grievance stating:

> THE DECISION/ACTION THAT I AM GRIEVING IS: Classifications to place me in segregation over an infraction they knew was illegal. They knew it was for using alleged disrespectful language in a grievance and they had to know that it is my constitutional right to do so and to punish an inmate for it is a violation of the law and my rights. The people that placed me in segregation for exercising my 1st amendment rights needs to be fired. And please give me the names of those all involved.

(6-ER-836; 3-ER-311–314, Trial Tr. Vol. 1 at 105:21–108:5; 4-ER-262–263, Trial Tr. Vol. 2 at 262:8–263:3) As support for this grievance, Mr. Williams cited:

> … 64 Fed 1276 9th Circuit Bradley vs. Hall and Richey 9th Cir yet to be published but will be next edition and all the other cases In between. Its settled law and you all knew.

(6-ER-836)

Three days later, on January 11, 2016, Mr. Williams submitted two grievances to the defendant in this case, Deputy Fox. (4-ER-474, Trial Tr. Vol. 2 at 267:11–15; 4-ER-478, Trial Tr. Vol. 2 at 271:5–7) The first January 11 grievance pertained to an unknown deputy's refusal to process one of Mr. Williams's prior grievances because of disrespectful language in the grievance. (4-ER-474, Trial Tr. Vol. 2 at 267:21–25) Deputy Fox refused to process Mr. Williams's first January 11 grievance because it contained disrespectful language. (3-ER-246, Trial Tr. Vol. 1 at 39:7–11; 3-ER-247, Trial Tr. Vol. 1 at 41:11–14; 3-ER-251, Trial Tr. Vol. 1 at 45:14–24; 3-ER-264, Trial Tr. Vol. 1 at 58:16–20; 3-ER-272, Trial Tr. Vol. 1 at 66:11–15; 3-ER-284–285, Trial Tr. Vol. 1 at 78:9-79:1) Mr. Williams then submitted a second January 11 grievance. (4-ER-478, Trial Tr. Vol. 3 at 271:5–7) That second grievance pertained to Deputy Fox's refusal to process the first January 11 grievance because of disrespectful language. (4-ER-478, Trial Tr. Vol. 2 at 271:11–18) Deputy Fox also

refused to process Mr. Williams's second January 11 grievance because it contained disrespectful language. (3-ER-247, Trial Tr. Vol. 1 at 41:11–14; 3-ER-272, Trial Tr. Vol. 1 at 66:11–15; 3-ER-284–285, Trial Tr. Vol. 1 at 78:9–79:1)

Because Deputy Fox refused to process the January 11 grievances, those grievances do not exist in the record. However, Mr. Williams documented the two January 11 grievances in a January 12 grievance:

> THE DECISION/ACTION THAT I AM GRIEVING IS: of guard fox to throw away my outgoing mail. On 1/11/16 I put a grievance out my cell door for 7PM mail pick up. Fox took it, read it and refused to take it. It was left on the tier. At 7:15, 1/11/16, I then put out the cell door a grievance grieving fox refusing to take and process my mail (courts consider grievance legal mail). He took it, read it and said, "first chance I get at your neck..." and then tossed it in the air onto the tier where it was presumably thrown away.

(6-ER-839; 3-ER-314–315, Trial Tr. Vol. 1 at 108:6–109:23)

## B. Deputy Fox relied on an unconstitutional jail policy that allowed deputies to refuse to process grievances for disrespectful language.

The version of Ada County Jail Standard Operating Procedure 4.5 that was in effect in January of 2016 stated, "Grievances are to be used only for legitimate communications." (5-ER-549–550, Trial Tr. Vol. 3 at 341:16–342:8) The version of the Ada County Jail Inmate Handbook that was in effect in

January 2016 (as revised in April 2015) stated, "You are expected to use respectful language to express grievances or IRFs[1] and when interacting with others. Grievances or IRFs that contain vulgar references or otherwise insolent language will not be answered." (6-ER-808; 4-ER-355, Trial Tr. Vol. 2 at 148:3–9; 5-ER-552, Trial Tr. Vol. 3 at 344:13–19) Deputy Fox relied on these policies when he refused to process Mr. Williams's January 11 grievances for disrespectful language. (3-ER-284–285, Trial Tr. Vol. 1 at 78:24–79:1; 3-ER-290, Trial Tr. Vol. 1 at 84:4–21; 4-ER-355, Trial Tr. Vol. 2 at 148:3–12) Deputy Fox explained the history of the policies:

> So the policy that -- that I mentioned about the vulgar language, it wasn't always there. So there were several years before this incident where we -- we entered all grievances, no matter what they said, verbatim. And I guess the sergeants, the higher-ups got tired of the foul language. So, in briefing, not -- maybe a couple, three weeks prior to this incident, we were instructed by our supervisors not to take those types of grievances anymore if they had foul languages ….

(3-ER-277, Trial Tr. Vol. 1 at 71:8–16)

---

[1] "IRF" refers to "Inmate Request Form." (6-ER-782)

**C.   Mr. Williams sued Deputy Fox for violation of his First Amendment right to petition.**

Mr. Williams filed suit under 28 U.S.C. § 1983 against Deputy Fox in the U.S. District Court for the District of Idaho, No. 1:16-cv-143-DCN. Mr. Williams's operative complaint states that "the defendant violated [Mr. Williams's] rights under the <u>First Amendment</u> when he refused to accept and process properly written and submitted grievances by Mr. Williams." (2-ER-171, emphasis in original) Mr. Williams also alleged as follows:

- "On January 11th, 2016, while a prisoner in the Ada County Jail I submitted a grievance by putting it out my cell door …. This is the correct way to submit a grievance and mail to guards for pick up."

- "My grievance contained a complaint against a guard who had refused to accept a grievance I had written earlier that day because, in his estimation, I used disrespectful language in the grievance."

- "At approximately 7:00 pm on January 11th, 2016, defendant fox took my grievance from my cell door. He read my grievance then told me he would not accept it because it allegedly contained disrespectful language. He stated 'you will not address an ada county deputy disrespectfully.' He then slid my grievance back under my cell door and threatened to issue me a disciplinary report if I continue to use 'disrespectful language in grievances.'"

- "I asked defendant fox to accept my lawfully written and sub-mitted grievance I then slid it back to him through under the cell door."

- "He refused to take it. He told me it could sit there until the porters swept the tier, which implied that it would be swept away in the trash."

- "I immediately wrote a grievance that complained of defend-ant fox actions of refusing to accept and process my grievance. I then slipped it through the door for pick up."

- "About fifteen minutes later, defendant fox appeared at my cell door during a routine welfare check. He snatched my new grievance and read it. He then made an inappropriate com-ment and tossed my grievance into the air where it landed on the tier next to my other grievance he refused to accept."

- "When fox refused to accept and process my grievance due to language he deemed disrespectful, he knew it violated ninth circuit case law because prior to this incident I had informed him and other staff of case law which held that it is illegal to reject grievances for the reasons he did. He was also aware of grievance 8821, exhibit B, which cited Bradly v. Hall, 64 F3d 1276 and Richey v. Dahne."

(2-ER-171–173, ¶¶ 4–11)

## D. The district court initially granted summary judgment to Deputy Fox.

In granting summary judgment to Deputy Fox, the district court em-

phasized that "frivolous 'grievances' do not qualify as petitions for redress

and, therefore, are not protected by the First Amendment." (2-ER-152) The

district court held that, "[i]n reviewing the record, what physical evidence is available appears to suggest that Williams was filing frivolous grievances" because "[b]y his own admission, Williams's January 11 grievances also complaint of grievance rejections for disrespectful language." (2-ER-154)

The district court also ruled in favor of Deputy Fox on qualified immunity grounds. According to the district court, "Fox qualifies for immunity because prison policies regulating inappropriate language in grievances are not clearly unconstitutional and Fox acted in accordance with ACJ's policies." (2-ER-159)

**E.**    **This Court vacated the summary judgment ruling and remanded for further proceedings.**

Mr. Williams appealed the district court's summary judgment ruling, and this Court (on March 16, 2021) reversed and remanded. (2-ER-138–140)[2] This Court explained the basis for its decision:

> The district court erred in granting summary judgment for defendant Fox. Resolving all factual disputes and drawing all reasonable inferences in Williams's favor, there is a genuine dispute of material fact as to whether Fox violated Williams's First Amendment rights to petition and against retaliation when Fox

---

[2] *Williams*, 840 F. App'x at 227.

rejected Williams's two grievances and warned of possible disciplinary action. *See Brodheim v. Cry*, 584 F.3d 1262, 1270-71 (9th Cir. 2009) (explaining that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment" and concluding that a threat of punitive action beyond refusing to accept a grievance can constitute an adverse retaliatory action). Accordingly, it was also error to grant summary judgment on the basis of qualified immunity as these genuine factual disputes make it unclear whether qualified immunity should apply at this stage of the case. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011).

(2-ER-139–140)

**F.     After this Court ruled, the district court denied Mr. Williams reimbursement for his $505 appellate filing fee.**

On April 23, 2021, Mr. Williams moved for the district court to order that he be reimbursed for his appellate filing fee. (2-ER-136–137; 2-ER-134–135; 2-ER-133) Mr. Williams provided the district court with evidence that he paid $505 as a filing fee for his appeal. (2-ER-127) On June 14, 2021, the district court denied Mr. Williams's motion for reimbursement of his filing fee for the appeal. (2-ER-132) The district court reasoned that Mr. Williams "did not file his request in the appropriate court." (*Id.*, citing Fed. R. App. P. 39(d)(1)). It appears that the district court did not consider Federal Rule of Appellate Procedure 39(e), which states, "The following costs on appeal are

taxable *in the district court* for the benefit of the party entitled to costs under this rule: … the fee for filing the notice of appeal." Fed. R. App. P. 39(e) (emphasis added).

**G.    At trial, Deputy Fox admitted to refusing to process the grievances because the grievances contained disrespectful language.**

After this Court remanded, the parties proceeded to trial. Mr. Williams called Deputy Fox as the first witness, and Deputy Fox acknowledged that he refused to process Mr. Williams's January 11 grievances because they contained disrespectful language. (3-ER-245, Trial Tr. Vol. 1 at 39:7–11; 3-ER-247, Trial Tr. Vol. 1 at 41:11–14; 3-ER-251, Trial Tr. Vol. 1 at 45:14–24; 3-ER-264, Trial Tr. Vol. 1 at 58:16–20; 3-ER-272, Trial Tr. Vol. 1 at 66:11–15; 3-ER-284–285, Trial Tr. Vol. 1 at 78:9–79:1) According to Deputy Fox, "I followed the policy in that there was inappropriate language on those grievances. So, therefore, I was not obligated to enter those into the system." (3-ER-284–285, Trial Tr. Vol. 1 at 78:24–79:1) In Deputy Fox's words, "It doesn't matter if there was a grievable issue on it. The fact that you were cussing and saying -- calling deputies derogatory names was justification enough for me not to enter those grievances, period." (3-ER-290, Trial Tr. Vol. 1 at 84:18–21)

According to Deputy Fox, the policy gave him the discretion to not process

a grievance, regardless of an inmate's constitutional rights:

> [Deputy Fox]. As a deputy, there are certain -- certain things that are left up to the deputy's discretion. So --
>
> Q. And whether or not to honor a constitutional right --
>
> [Deputy Fox]. Yes.
>
> Q. -- you, in your discretion, are allowed to stop an inmate from filing inmate grievances if you deem the grievances -- you don't like them?
>
> [Deputy Fox]. If -- if policy or my superior dictates, yes.

(3-ER-290, Trial Tr. Vol. 1 at 84:4–11)

## H. The district court declined to instruct the jury on the law prohibiting officers from refusing to process grievances for disrespectful language.

After the district court proposed jury instructions, Mr. Williams ob-

jected to the jury instructions and made clear that the district court should

include an instruction on the law that governs a jail's refusal to process griev-

ances for disrespectful language. Mr. Williams stated:

> The court needs to put specifically on the record. Does it believe either policy or law (more importantly) allows a guard to take a grievance at a cell door and deem it not legitimate or frivolous and then not file it or make a record of it even? (or not clearly established?) Yes or no? The law is clear, No ….

(2-ER-83)

During the jury charge conference, Mr. Williams sought a jury instruction—pursuant to controlling Ninth Circuit case law—that jails may not refuse to process grievances because of disrespectful language. (5-ER-644–646, Trial Tr. Vol. 3 at 436:4–438:8) The district court refused to give the instruction. (*Id.*) The parties and the district court engaged in the following exchange:

> THE COURT: You're making -- you're making good closing argument. But the issue of what the policy is is something the jury is going to determine, and then they will apply their decision to these questions. I can't possibly cover every possible scenario out there.

> MR. WILLIAMS: Well, that's not every possible. It's only one question I'm asking to be included. So does the -- does the Court believe that the law does allow a guard -- let's forget about policy, but just the law without the qualified immunity factors -- does the law allow a guard at the cell door to take a grievance and determine that there's unnecessary language in there?

> THE COURT: I'm telling you that's an issue for the jury to decide.

> MR. WILLIAMS: The matter of the law on that?

> THE COURT: No. Whether or not that is the policy in effect. That's what this -- that's what the Ninth Circuit said I should have given to the jury, is the -- is that type of a question. And I'm

doing that. So your objection is noted, but I'm not making any changes. *Richey* covers disrespectful language; it doesn't cover legitimacy of the grievance.

MR. WILLIAMS: Absolutely. It went into great detail. Either the 2015 or the 2017 one, it says --

THE COURT: We have a difference of opinion on that. So let's --

MR. WILLIAMS: It says --

THE COURT: I'm not going to change it.

MR. WILLIAMS: Okay. But --

THE COURT: Just let it go.

MR. WILLIAMS: And I --

THE COURT: You've got your objection to preserve it.

(*Id.*)

## I. The district court's verdict form asked the jury whether Mr. Williams's grievances were "legitimate" and not whether they were "nonfrivolous."

The district court, *sua sponte*, decided that this case would benefit from a Federal Rule of Civil Procedures 49 special verdict form. (2-ER-117) In the court's initial proposal of questions for the jury, the court included questions on whether Mr. Williams's grievances included a "nonfrivolous complaint." (2-ER-120) In that initial proposal, the court explained in a long footnote the

meaning of the term "nonfrivolous." (2-ER-120, n.1) The questions that the court initially proposed did not include anything about whether Mr. Williams's grievances were "legitimate," only "nonfrivolous." (*See* 2-ER-117–125)

In its second proposal of questions for the jury, the district court again included questions on whether Mr. Williams's grievances were "nonfrivolous," but this time the court also included the word "legitimate" in the questions:

> Without regard to the type of language Williams used in Grievance #1, do you find that Grievance #1 presented a *legitimate* issue and sought a *legitimate* resolution of that issue, and, therefore, was a *nonfrivolous* grievance?
>
> Without regard to the type of language Williams used in Grievance #2, do you find that Grievance #2 presented a *legitimate* issue and sought a *legitimate* resolution of that issue, and, therefore, was a *nonfrivolous* grievance?"

(2-ER-102, emphasis added) The court did not explain the meaning or source of the word "legitimate." (*See id.*)[3]

---

[3] Mr. Williams objected to these questions, observing that the court was "now using more often 'legitimate.'" (2-ER-83). Also, the district court

At trial, the court modified the question yet again—this time leaving out the word "nonfrivolous" entirely and instead going solely with "legitimate":

> Without regard for the language Williams used in Grievance 1 and/or 2, do you find that Grievance 1 and/or 2 presented a *legitimate* issue and sought a *legitimate* resolution of that issue?

(2-ER-76, Question No. 9, emphasis added)

**J.  Based on a *sua sponte* qualified immunity ruling and the jury's answers on the verdict form, the district court granted judgment for Deputy Fox.**

The jury returned a verdict using a special verdict form that the district court elected to use pursuant to Federal Rule of Civil Procedure 49. As relevant to this appeal, the jury answered the following questions pertaining to Mr. Williams's right-to-petition claim:

---

acknowledged Mr. Williams's standing objection to all of the questions. (5-ER-642, Trial Tr. Vol. 3 at 434:7–12; 5-ER-642, Trial Tr. Vol. 3 at 434:24–25)

**Question No. 6**: Did Fox refuse to accept or process Grievance 1 and/or 2?

**Answer to Question No. 6**: NO _____        YES __X__

If your answer to Question No. 6 is "Yes", proceed to Question No. 7. If your answer to Question No. 6 is "No", proceed to Question No. 15.

**Question No. 7**: Was Fox's refusal to accept or process Grievance 1 and/or 2 consistent with some or all jail policies?

**Answer to Question No. 7**: NO _____        YES __X__

**Question No. 8**: Was the language of the grievances a substantial or motivating factor or reason that Fox refused to accept or process Grievance 1 and/or 2?

**Answer to Question No. 8**: NO _____        YES __X__

**Question No. 9**: Without regard to the language Williams used in Grievance 1 and/or 2, do you find that Grievance 1 and/or 2 presented a legitimate issue and sought a legitimate resolution of that issue?

**Answer to Question No. 9**: NO __X__        YES _____

(2-ER-76)

The district court then issued an Order of Dismissal and Judgment Upon Application of the Law to the Jury's Special Verdict. (1-ER-19) The court began by acknowledging that "some of the Ada County Jail's grievance policies and customs appeared to violate clearly established law (prohibiting

- 20 -

disrespectful language in grievances)" (1-ER-20), but the court nonetheless entered judgment for Deputy Fox—for two reasons.

The first reason was not even based on the jury's answers. The district court held that "Deputy Fox was entitled to qualified immunity because the right at issue was not clearly established," even though this Court had reversed the district court's earlier ruling that Deputy Fox was entitled to qualified immunity. (1-ER-23) In reaching this conclusion, the district court made a remarkable (and unprecedented) statement: "the law is not clearly established whether a *direct* claim for violation of the right to petition the government for grievances exists or whether the only actionable right to petition a claim is an indirect claim that sounds in retaliation." (1-ER-25, emphasis in original)

As a second reason, the district court pointed to the jury's answer of "No" to the question, "Without regard to the language Williams used in Grievance 1 and/or 2, do you find that Grievance 1 and/or 2 presented a legitimate issue and sought a legitimate resolution of that issue?" (1-ER-32)

**K.**    **Mr. Williams sought post-trial relief, which the district court denied.**

After the jury returned the verdict, Mr. Williams filed a Federal Rule of Civil Procedure 50 / 59 motion. (2-ER-40) In that motion, Mr. Williams stated that the district court erred when it disregarded the Ninth Circuit's decisions in *Bradley* and *Richey* pertaining to "disrespectful" language. (2-ER-41) Mr. Williams also took issue with the district court's question on whether his grievances were "legitimate," contending that this language was not appropriate for the jury question. (2-ER-41) The district court denied Mr. Williams's motion. (1-ER-2)

## SUMMARY OF ARGUMENT

This Court should vacate the judgment and remand for a new trial on Mr. Williams's right-to-petition claim—for three reasons.

*First*, the district court erred in determining that Deputy Fox was entitled to qualified immunity. (1-ER-23–31) The district court's qualified immunity ruling was inconsistent with this Court's earlier ruling (1-ER-138–140) and thus violated the mandate rule; and, in any event, the right to have a nonfrivolous jail grievance processed—even when it contains disrespectful

language—is clearly established. *See Brodheim*, 584 F.3d at 1271 (citing *Bradley v. Hall*, 64 F.3d 1276, 1281–82 (9th Cir. 1995)); *Richey v. Dahne*, 733 F. App'x 881, 883 (9th Cir. 2018); *Richey v. Young*, No. 4:16-CV-5047-RMP, 2021 U.S. Dist. LEXIS 52425, *13 (W.D. Wash. Mar. 19, 2021); *Mitchell v. Gonzales*, No. 1:23-cv-00062-SAB (PC), 2023 U.S. Dist. LEXIS 83817, *8 (E.D. Cal. May 11, 2023).

***Second***, the district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison grievance and that a deputy may not refuse to process a grievance because of disrespectful language. It was wrong for the district court to rule that it was "an issue for the jury to decide." (5-ER-645, Trial Tr. Vol. 3 at 437:14–15) Courts determine the law; juries determine the facts. Because the jury was not instructed that the First Amendment protects disrespectful language in a prison grievance, the jury lacked the proper understanding of the law as needed to address the court's questions on the verdict form, including the question as to whether Mr. Williams's grievances were "legitimate." (2-ER-76, Question No. 9)

*Third*, the district court erred in asking the jury whether Mr. Williams's grievances were "legitimate." The standard for whether a prisoner's petition/grievance is protected by the First Amendment is whether it is "nonfrivolous" in contrast to "frivolous." The word "legitimate" does not embody the same low bar as "nonfrivolous." The jury easily could have construed the court's question regarding a "legitimate" grievance in this context to mean something like a *winning* grievance under the law, in contrast to a mere *nonfrivolous* grievance.

The district court's error in using the word "legitimate" was compounded by the fact that the jury had heard the word "legitimate" throughout the trial in the context of the jail's unconstitutional policy of allowing deputies to refuse to process grievances for disrespectful language—that policy described the disrespectful language in terms of whether the language represented a "legitimate" communication. (5-ER-549–550, Trial Tr. Vol. 3 at 341:16-342:8) Because of this, the jury had every reason to believe that: (1) this question on whether Mr. Williams's grievances were "legitimate" was a reference to the prison policy that allowed deputies to refuse to

process grievances for disrespectful language; (2) the court was asking the jury to decide whether Mr. Williams's grievances complied with that prison policy; and (3) the jury should conclude that the grievances were not "legitimate" if the jury believed the grievances contained disrespectful language. All of this is inconsistent with the law that this Court referenced in reversing the district court's summary judgment ruling: "'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" (2-ER-139, quoting *Brodheim*, 584 F.3d at 1270–71)

Also, this Court should direct the district court to award Mr. Williams his $505 filing fee for the prior appeal. The district court denied Mr. Williams's motion for reimbursement of his filing fee for his prior appeal. (2-ER-132) The district court reasoned that Mr. Williams "did not file his request in the appropriate court." (*Id.*, citing Fed. R. App. P. 39(d)(1)). The district court simply overlooked Rule 39(e), which provides that "[t]he following costs on appeal are taxable *in the district court* for the benefit of the party entitled to costs under this rule: … the fee for filing the notice of appeal." Fed. R. App. P. 39(e) (emphasis added). Thus, in addition to everything else discussed

herein, the Court should remand with directions for the district court to order that Mr. Williams be reimbursed for his $505 appellate filing fee.

## STANDARD OF REVIEW

This Court "review[s] the district court's determination of qualified immunity de novo." *Johnson v. Walton*, 558 F.3d 1106, 1110 (9th Cir. 2009) (citing *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008)). This Court "review[s] the district court's jury instructions de novo for legal error . . ." *N. L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (citing *Navellier v. Sletten*, 262 F.3d 923, 944 (9th Cir. 2001)). This Court reviews a district court's interpretation of the Federal Rules de novo. *See Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021).

## ARGUMENT

**I.    This Court should vacate the judgment and remand for a new trial on Mr. Williams's right-to-petition claim.**

This Court should remand for a new trial for multiple independent reasons: (A) the district court erred in determining that Deputy Fox was entitled to qualified immunity; (B) the district court erred in refusing to instruct the jury that a jail may not refuse to process a grievance for disrespectful

language; and (C) the district court erred in asking the jury whether Mr. Williams's grievances were "legitimate."

### A. The district court erred in determining that Deputy Fox was entitled to qualified immunity.

As explained below, (1) the district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule; and (2) in any event, the right to have a nonfrivolous jail grievance processed—even when it contains disrespectful language—is clearly established.

#### 1. The district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule.

"The mandate rule jurisdictionally bars district courts and agencies from revisiting matters that this court has decided." *Valley Hosp. Med. Ctr., Inc. v. NLRB*, 93 F.4th 1120, 1125 (9th Cir. 2024). "When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled." *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (alteration in original). "The [district court] is bound by the decree as the law

of the case, and must carry it into execution according to the mandate." *Id.* "That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.*

Here, on Mr. Williams's appeal of the district court's summary judgment ruling, this Court held that Deputy Fox was not entitled to qualified immunity on the record that existed, because it is settled law that disrespectful language in a prison/jail grievance is protected under the First Amendment and there were genuine disputes of material fact as to whether Deputy Fox violated Mr. Williams's right to petition. (2-ER-139) When the district court, on remand, held that Deputy Fox was entitled to qualified immunity, the district court did not base that decision on any new facts. (*See* 1-ER-23–31) The district court did not identify anything in the record that was different than when this Court addressed qualified immunity. (*See id.*) Instead, the district court based its decision on its (incorrect) view of the law. (*See id.*) But this Court already had addressed the law and concluded that the law did

not support qualified immunity for Deputy Fox. There were no intervening controlling case law decisions between this Court's earlier ruling and the district court's later ruling that can explain the district court's divergence with this Court.

The topic of this Court's ruling and its implications for the district court came up at trial, and the district court told Mr. Williams, "You know why I got reversed, because I made the decision when [the Ninth Circuit] said the jury should." (4-ER-445, Trial Tr. Vol. 2 at 238:23–25) The district court thus recognized this Court's mandate to let the jury decide Mr. Williams's right-to-petition claim, but the district court disregarded that mandate nonetheless when it decided this claim on the basis of qualified immunity.

For these reasons, the district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule.

**2. The right to use disrespectful language in a jail grievance and have it processed is clearly established.**

Even apart from the mandate rule, the district court was wrong to hold that Deputy Fox was entitled to qualified immunity. The district court's rationale for concluding that Deputy Fox was entitled to qualified immunity is extraordinary. According to the district court, "the law is not clearly established whether a *direct* claim for violation of the right to petition the government for grievances exists or whether the only actionable right to petition a claim is an indirect claim that sounds in retaliation." (1-ER-25, emphasis in original) In other words, according to the district court, the First Amendment right to petition using disrespectful language is actionable only where a plaintiff shows an *indirect* violation of the right based on retaliation and not where a plaintiff shows a *direct* violation of the right based on a refusal to process the petition. This is a first-of-its-kind ruling—and it is wrong for multiple reasons.

*First*, case law shows that a prisoner's First Amendment right to use disrespectful language in a grievance and have it processed is not dependent on whether any later retaliation is alleged and proved. In *Brodheim*, this

Court held that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." 584 F.3d at 1271 (citing *Bradley*, 64 F.3d at 1281–82). Later, in *Richey v. Dahne*, a defendant argued that *Brodheim*'s clearly established ruling was limited to retaliation cases. This Court rejected that argument:

> Dahne contends that *Brodheim* clearly established only that it would be unconstitutional to punish a prisoner because of the content of a grievance, and not that it was unconstitutional to refuse the grievance because of that content. We reject this contention. The holding of *Brodheim* is not as narrow as Dahne contends.

733 F. App'x 881, 883 (9th Cir. 2018). In addressing the facts before it, the Court held, "the violation here occurred when [defendant] refused to allow the grievance to proceed through the administrative process after [the prisoner] did not rewrite it in a way that satisfied [defendant's] sense of propriety." *Id.*

Accordingly, because of *Brodheim*, "[t]he law was well established before 2015 that disrespectful language in a grievance is protected speech, and a prison official violates the First Amendment when he or she refuses to allow the grievance to proceed through the administrative process if the

inmate resubmits the grievance without rewriting it to remove the offensive language." *Richey v. Young*, No. 4:16-CV-5047-RMP, 2021 U.S. Dist. LEXIS 52425, at *13 (E.D. Wash. Mar. 19, 2021) (citing *Richey v. Dahne*, 733 F. App'x at 883); *see also Mitchell v. Gonzales*, No. 1:23-cv-00062-SAB (PC), 2023 U.S. Dist. LEXIS 83817, at *8 (E.D. Cal. May 11, 2023) ("The First Amendment prohibits State Defendants from refusing to process grievances because the language in the grievances fails to conform to the prison's conception of acceptable content.").

The district court did not grapple with any of these cases (including *Brodheim*) when it held, after the trial, that Deputy Fox was entitled to qualified immunity (*see* 1-ER-23-31), which is especially problematic because this Court cited *Brodheim* as the basis for reversing the district court's earlier qualified immunity ruling (2-ER-139), and Mr. Williams cited *Brodheim* and its progeny multiple times throughout the trial proceedings. (4-ER-462, Trial Tr. Vol. 2 at 255:19–21; 4-ER-501, Trial Tr. Vol. 2 at 294:8–20; 4-ER-502, Trial Tr. Vol. 2 at 295:19–22; 5-ER-517, Trial Tr. Vol. 3 at 309:16–22; 5-ER-528, Trial Tr.

Vol. 3 at 320:13–20; 5-ER-552, Trial Tr. Vol. 3 at 345:21–24; 5-ER-636, Trial Tr.

Vol. 3 at 428:10–23; 5-ER-644, Trial Tr. Vol. 3 at 436:1–9)

*Second*, no court within the Ninth Circuit has ever held that the First

Amendment right to petition is actionable only where a plaintiff shows an

*indirect* violation of the right based on government retaliation for the petition

in contrast to a *direct* violation of the right based on the government's refusal

to process the petition.

Here, the district court relied on the fact that the Ninth Circuit Manual

of Model Civil Jury Instructions states the elements of a right to petition

claim only with respect to such claims involving retaliation. (1-ER-26) But

the fact that the Model Instructions address a common form of a right-to-

petition claim does not mean that other forms do not exist. The Model In-

structions are not designed to address every form of a claim that can exist

under the law. *See* Ninth Circuit Manual of Model Civil Jury Instructions,

Introduction (Jan. 2017) ("The instructions in this Manual are models. They

are not mandatory, and they must be reviewed carefully before use in a

particular case. They are not a substitute for the individual research and drafting that may be required in a particular case ….").

The district court also relied on select cases from the Central District of California where a court held that a person petitioning the government is not entitled to any particular response. *See Garcia v. Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 U.S. Dist. LEXIS 199501, at *16 (C.D. Cal. Aug. 24, 2021) ("'[A] prisoner's right to petition the government is a right of expression and does not guarantee a response to the petition or the right to compel government officials to act on the petition.'") (quoting *Chacon v. Diaz*, No. EDCV 20-1898-JWH (KS), 2020 U.S. Dist. LEXIS 238061, at *15 (C.D. Cal. Nov. 25, 2020) (quoting *Miller v. Sanchez*, No. CV 20-06-GW (KK), 2020 U.S. Dist. LEXIS 17170, at *26-27 (C.D. Cal. Feb. 3, 2020)), *adopted*, 2021 U.S. Dist. LEXIS 15870 (C.D. Cal. Jan. 27, 2021); *see also Smith v. Arkansas State Highway Emp., Loc. 1315*, 441 U.S. 463 (1979)). However, there is a difference between not acting on a grievance (as occurred in the Central District of California cases) and not allowing a grievance to proceed through the administrative process (as occurred here). While a prison deputy can decline to act on a grievance after

- 34 -

it has been processed, the prison deputy cannot prevent the grievance from proceeding through the administrative process. *See Richey v. Dahne*, 733 F. App'x at 883 ("[T]he violation here occurred when [defendant] *refused to allow the grievance to proceed* through the administrative process after [the prisoner] did not rewrite it in a way that satisfied [defendant's] sense of propriety.") (emphasis added); *Richey v. Young*, 2021 U.S. Dist. LEXIS 52425, at *13 ("The law was well established before 2015 that disrespectful language in a grievance is protected speech, and a prison official violates the First Amendment when he or she *refuses to allow the grievance to proceed* through the administrative process if the inmate resubmits the grievance without rewriting it to remove the offensive language.") (emphasis added); *Mitchell*, 2023 U.S. Dist. LEXIS 83817, *8 ("The First Amendment prohibits State Defendants from *refusing to process* grievances because the language in the grievances fails to conform to the prison's conception of acceptable content.") (emphasis added).

*Third*, the district court relied on a false analogy to the Prison Litigation Reform Act ("PLRA"). The district court referenced the PLRA's

requirement that courts screen new lawsuits from prisoners *"before docketing,*
*if feasible or, in any event, as soon as practicable after docketing . . ."* 28
U.S.C. § 1915A (emphasis added). The district court stated, "Title 28 U.S.C.
§ 1915A specifies no requirement as to whether, how, or what kind of, a rec-
ord needs to be made when a complaint is screened out for frivolousness or
abuse of the system 'before filing.'" (1-ER-30) The district court posed the
question, "If a federal district court may perform pre-filing screening of civil
rights complaints, may an initial responder in a jail do so without an inmate
grievance?" (*Id.*)

With this reasoning, the district court implied that federal courts are
screening prisoner complaints *without allowing the complaints to be docketed*.
This is a remarkable suggestion by a federal court. If the district courts were
refusing to docket complaints, that would be an even greater First Amend-
ment violation than we have in this case. Fortunately, there is no evidence
that district courts are engaging in such problematic activity. Section 1915A
allows for *screening* to take place "before docketing," but section 1915A does
not give courts the discretion to decline to docket the complaint and the

court's dismissal order *after* the screening takes place. If courts were permitted to refuse to docket complaints under section 1915A, there would be no way to document and verify the cases that count towards the three-strikes rule. *See* 28 U.S.C. § 1915(g). Also, there would be no way for the prisoner to appeal the screening decision. District courts need to docket complaints even when the courts believe the complaints are meritless for the same reasons that Deputy Fox needed to process Mr. Williams's grievances—without processing the grievance, there is no written record of what the grievance pertained to and no way for the prisoner to properly appeal the denial of his grievance.

For all of these reasons, the district court erred in determining that Deputy Fox was entitled to qualified immunity.

> **B.** **The district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison grievance.**

Mr. Williams repeatedly asked that the jury be instructed that the First Amendment protects disrespectful language in a prison grievance. (1-ER-83; 5-ER-644–646, Trial Tr. Vol. 3 at 436:4–438:8). The district court, however,

believed that this was a factual question for the jury to determine and not a legal point on which the jury should be instructed:

> MR. WILLIAMS: …. So does the -- does the Court believe that the law does allow … a guard at the cell door to take a grievance and determine that there's unnecessary language in there?
>
> THE COURT: I'm telling you that's an issue for the jury to decide.

(5-ER-645, Trial Tr. Vol. 3 at 437:9–15)

That was wrong. Although the question of whether Deputy Fox refused to process Mr. Williams's grievances because of disrespectful language was a fact question for the jury, the principle that the First Amendment protects disrespectful language in a prison grievance was not a fact question for the jury. Indeed, this Court reversed the district court's summary judgment ruling earlier in this case because controlling case law holds that "'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" (2-ER-139-140, quoting *Brodheim*, 584 F.3d at 1270–71)

The district court should have instructed the jury on this settled point of law. It was wrong for the district court to rule that it was "an issue for the

jury to decide." (5-ER-645, Trial Tr. Vol. 3 at 437:14–15) Courts determine the law; juries determine the facts. "'The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts.'" *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)); *see also Walker v. Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991) ("The court should not have asked the jury to decide the legal question of the adequacy of the post-termination proceedings.").

The district court's error was consequential and highly prejudicial to Mr. Williams. Because the jury was not instructed that the First Amendment protects disrespectful language in a prison grievance, the jury lacked the proper understanding of the law needed to address the court's questions, including the question on whether Mr. Williams's grievances were "legitimate." (2-ER-76, Question No. 9) The district court permitted the jury to believe that disrespectful language in a grievance was not protected by the First Amendment, and thus the jury easily could have believed that the mere existence of disrespectful language in a grievance made it not "legitimate." But

that would be incorrect. *See Brodheim*, 584 F.3d at 1270–71. In turn, because the jury answered that the grievances were not "legitimate," the district court entered judgment for Deputy Fox. (1-ER-32) As such, this was anything but a harmless error.

For these reasons, the district court's decision not to instruct the jury on this essential point of law was reversible error.

### C.  The district court erred in asking the jury whether Mr. Williams's grievances were "legitimate."

"Prisoners' grievances, unless *frivolous* … , concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citation omitted; emphasis added). In this case, the district court proposed a series of jury questions after announcing that it intended to use a Rule 49 special verdict form. In proposing jury questions, the court's earliest iterations included language about the grievances being "frivolous" in contrast to "nonfrivolous" (2-ER-120), but the court eventually decided to drop that language and questioned the jury only on whether the grievances were "legitimate." (2-ER-76, Question No. 9) That

was error. As explained below, (1) the word "legitimate" is not the equivalent of the word "nonfrivolous"; and (2) because the word "legitimate" comes from the unconstitutional prison policy, use of the word "legitimate" for the jury question was improper.

### 1. The word "legitimate" is not the equivalent of the word "nonfrivolous."

The standard for whether a prisoner's petition is protected by the First Amendment is whether the petition is "frivolous" in contrast to "nonfrivolous." *Jones*, 791 F.3d at 1035; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996); *Jackson v. Sullivan*, 692 F. App'x 437, 441-42 (9th Cir. 2017); *Thornton v. Neotti*, 472 F. App'x 757, 758 (9th Cir. 2012); *Hebbe v. Pliler*, 611 F.3d 1202, 1208 (9th Cir. 2010); *see also* 3-ER-152 (district court stating in its earlier summary judgment ruling that the standard is whether a petition is "frivolous"). The standard is never expressed as whether a petition is "legitimate" in contrast to "illegitimate." And for good reason—the word "legitimate" is not the equivalent of the word "nonfrivolous."

"A case may be deemed frivolous only when the 'result is obvious or the … arguments of error are wholly without merit.'" *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)). Thus, the "nonfrivolous" standard is a low bar. Even a weak case can be a nonfrivolous case. *See United States EEOC v. Robert L. Reeves & Assocs.*, 262 F. App'x 42, 44 (9th Cir. 2007) ("A weak case … is not necessarily a frivolous one."); *In re Mann*, 907 F.2d 923, 928 (9th Cir. 1990) ("Although most of Mann's arguments are weak, we do not find them frivolous.").

The word "legitimate" does not embody the same low bar as "nonfrivolous." Dictionaries define "legitimate" as being "allowed by law"[4]; or "according to law"[5]; or "accordant with law or with established legal forms and requirement"[6]; *see also Clements v. Barden Miss. Gaming, L.L.C.*, 373 F. Supp.

---

[4] Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/legitimate (last visited Aug. 5, 2024).

[5] Dictionary.com, https://www.dictionary.com/browse/legitimate (last visited Aug. 5, 2024)

[6] Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/legitimate (last visited Aug. 5, 2024)

2d 653, 665 (N.D. Miss. 2004) ("The Oxford English Dictionary, the definitive dictionary of the English language, includes the following definition for the word *legitimate*: 'Conformable to law or rule; sanctioned or authorized by law or right; lawful; proper.'") (emphasis in original). Thus, the jury here easily could have construed the court's question regarding a "legitimate" grievance in this context to mean something like a *winning* grievance under the law, in contrast to a mere *nonfrivolous* grievance. This explains why courts do not routinely substitute the word "legitimate" for the word "non-frivolous" in this context or any other.

Here, in granting judgment for Deputy Fox, the district court relied on the jury's answer of "No," to the question, "Without regard to the language Williams used in Grievance 1 and/or 2, do you find that Grievance 1 and/or 2 presented a *legitimate* issue and sought a *legitimate* resolution of that issue?" (1-ER-32, citing 2-ER-76, Question No. 9, emphasis added)[7] This was an

---

[7] In the district court's initial proposal of questions for the jury, the court included a question on whether Mr. Williams's grievances included a "non-frivolous complaint." (2-ER-120) Later, the court changed the question to ask whether Mr. Williams's grievance presented a "legitimate" issue and sought a "legitimate" resolution of that issue. (2-ER-76, Question No. 9)

improper question. This court should not have substituted the word "legitimate" for the word "nonfrivolous." That substitution changed the standard in a way that was highly prejudicial to Mr. Williams.

> **2. Because the word "legitimate" was used in the unconstitutional prison policy, use of the word "legitimate" for the jury question was improper.**

The district court's error in using the word "legitimate" was compounded by the fact that the jury had heard the word "legitimate" throughout the trial in a different context. The jail's unconstitutional policy of allowing deputies to refuse to process grievances for disrespectful language used the word "legitimate." (5-ER-549–550, Trial Tr. Vol. 3 at 341:16–342:8)[8] The version of Ada County Jail Standard Operating Procedure 4.5 that was in effect in January of 2016 stated, "Grievances are to be used only for legitimate communications." (5-ER-549–550, Trial Tr. Vol. 3 at 341:16–342:8) The jury heard the word "legitimate" dozens of times in the context of this

---

[8] There is no question that that the policy was unconstitutional. The district court recognized as much. (1-ER-20) As this Court recognized in this very case, the law is clear: "'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" (2-ER-139, quoting *Brodheim*, 584 F.3d at 1270–71)

unconstitutional jail policy throughout the trial. (*See, e.g.*, 3-ER-281, Trial Tr. Vol. 1 at 75:4–9; 4-ER-398, Trial Tr. Vol. 2 at 193:18–19; 4-ER-398, Trial Tr. Vol. 2 at 193:20–23; 4-ER-403, Trial Tr. Vol. 2 at 196:12–19; 4-ER-403–404, Trial Tr. Vol. 2 at 196:21–197:6; 5-ER-532, Trial Tr. Vol. 3 at 324:2–10; 5-ER-550, Trial Tr. Vol. 3 at 342:1–8; 5-ER-550, Trial Tr. Vol. 3 at 342:9–16; 5-ER-551, Trial Tr. Vol. 3 at 343:15–20; 5-ER-557, Trial Tr. Vol. 3 at 349:4–5; 5-ER-557, Trial Tr. Vol. 3 at 349:16–22; 5-ER-561, Trial Tr. Vol. 3 at 353:10–15; 5-ER-353–354, Trial Tr. Vol. 3 at 353:25–354:2; 5-ER-601, Trial Tr. Vol. 3 at 393:23–25; 5-ER-602, Trial Tr. Vol. 3 at 394:1–5; 5-ER-604, Trial Tr. Vol. 3 at 393:12–16; 5-ER-601, Trial Tr. Vol. 3 at 393:23–25; 5-ER-602, Trial Tr. Vol. 3 at 394:1–7; 5-ER-602, Trial Tr. Vol. 3 at 394:13–17; 5-ER-602-603, Trial Tr. Vol. 3 at 394:25–395:4; 5-ER-603, Trial Tr. Vol. 3 at 395:17–24; 6-ER-734, Trial Tr. Vol. 4 at 525:18–21; 6-ER-734, Trial Tr. Vol. 4 at 525:1–8; 6-ER-734, Trial Tr. Vol. 4 at 525:17–21)

The problem is that, as noted above, (1) the court never instructed the jury that the First Amendment does not allow prisons to refuse to process grievances for disrespectful language; and (2) the court used the language of the unconstitutional policy (*i.e.*, the word "legitimate") for a jury question

aimed at determining whether Mr. Williams's grievances were protected under the First Amendment. Because of this, the jury had every reason to believe that:

- This question on whether Mr. Williams's grievances were "legitimate" was a reference to the prison policy that allowed deputies to refuse to process grievances for disrespectful language;

- The court was asking the jury to decide whether Mr. Williams's grievances complied with that prison policy.

- The jury should conclude that the grievances were not "legitimate" if the jury believed the grievances contained disrespectful language.

Of course, all of this is inconsistent with the law that this Court referenced in reversing the district court's summary judgment ruling. (2-ER-139 (stating that "'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment'") (quoting *Brodheim*, 584 F.3d at

1270–71)) Accordingly, the district court erred in asking the jury whether Mr. Williams's grievances were "legitimate."

### D. The district court did not rely on the jury question on whether Deputy Fox adhered to a policy, and neither can Deputy Fox.

As noted, the district court relied on two grounds to issue judgment for Deputy Fox on Mr. Williams's right-to-petition claim: (1) qualified immunity because there is no clearly established right to sue on a *direct* right-to-petition violation; and (2) the jury's determination that Mr. Williams's grievances were not "legitimate." (1-ER-23–32) The district court did not rely on the jury's answer of "Yes" to the question of, "Could a reasonable jail employee in Fox's position have determined that one or more of the jail policies permitted him to return Grievance 1 and/or 2 to Plaintiff rather than accept or process it?" (2-ER-77, Question No. 14)

The district court had no basis to rely on the answer to this question because the jail policy here was patently violative of the First Amendment,[9]

---

[9] As noted, even the district court acknowledged the unconstitutional nature of the policy. (1-ER-20 ("[S]ome of the Ada County Jail's grievance policies

- 47 -

and a jail employee may not escape liability by claiming that he was enforcing a patently unconstitutional policy. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity."); *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002) ("Although state officials who rely on statutes are generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that is patently violative of fundamental constitutional principles.") (internal quotations and citation omitted); *Gorromeo v. Zachares*, 15 F. App'x 555, 557 (9th Cir. 2001) ("Because Plaintiff alleges conduct that is patently violative of clearly established, fundamental constitutional rights, the district court did not err in denying qualified immunity, regardless of whether Defendants relied upon statutes that purportedly authorized their conduct.").

---

and customs appeared to violate clearly established law (prohibiting disrespectful language in grievances ….."))

Deputy Fox's reliance on an unconstitutional jail policy does not give him a free pass. The district court properly did not rely on this basis to grant judgment to Deputy Fox, and Deputy Fox may not rely on this basis on appeal.

**II. This Court should direct the district court to award Mr. Williams his $505 filing fee for the prior appeal.**

Federal Rule of Appellate Procedure 39(e) provides that "[t]he following costs on appeal are taxable *in the district court* for the benefit of the party entitled to costs under this rule: … the fee for filing the notice of appeal." Fed. R. App. P. 39(e) (emphasis added).

As discussed, Mr. Williams prevailed on his earlier appeal of the district court's summary judgment ruling. After he prevailed, Mr. Williams moved for the district court to order that he be reimbursed for his appellate filing fee. (2-ER-136–37; 2-ER-134–35; 2-ER-133) Mr. Williams provided the district court with evidence that he paid $505 as a filing fee for his appeal. (2-ER-126) On June 14, 2021, the district court denied Mr. Williams's motion for reimbursement of his filing fee for the appeal. (2-ER-132) The district

court reasoned that Mr. Williams "did not file his request in the appropriate court." (*Id.*, citing Fed. R. App. P. 39(d)(1)).

The district court overlooked Rule 39(e). Mr. Williams filed his request in the proper court, and the district court erred in denying Mr. Williams his $505 appellate filing fee. Thus, the Court should remand with directions for the district court to order that Mr. Williams be reimbursed for his $505 appellate filing fee.

## CONCLUSION

This Court should reverse the district court's judgment and remand for a new trial. The Court should also direct the district court to order the reimbursement of Mr. Williams's appellate filing fee from his earlier successful appeal.

August 7, 2024

Respectfully submitted,

*/s/ M. Patrick Yingling*

M. PATRICK YINGLING
JOHN R. CASEY III
LARISA B. KUPINSZKY GAMBERG
REED SMITH LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
Tel: (312) 207-1000
mpyingling@reedsmith.com
jcasey@reedsmith.com
lkupinszkygamberg@reedsmith.com

*Counsel for Appellant*

## STATEMENT OF RELATED CASES PURSUANT TO
## CIRCUIT RULE 28-2.6

**9th Cir. Case Number(s)** 22-36014

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this court.

**Signature:** */s/ M. Patrick Yingling*     **Date:** August 7, 2024

# CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 22-36014

I am the attorney.

**This brief contains 9,753 words,** including 153 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature:** */s/ M. Patrick Yingling*    **Date:** August 7, 2024

# CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

**9th Cir. Case Number(s)** 22-36014

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Document(s)**

Opening Brief of Appellant Kent Glen Williams and Excerpts of Record Volumes 1 through 6 as well as Index Volume

**Signature:** */s/ M. Patrick Yingling*          **Date:** August 7, 2024