**No. 22-36014**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KENT GLEN WILLIAMS,

*Plaintiff-Appellant*,

v.

LANDON FOX, GUARD

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Idaho
No. 1:16-cv-143
Hon. David C. Nye

_____

## APPELLEE'S ANSWERING BRIEF

_____

**JAN M. BENNETTS**
Ada County Prosecuting Attorney
**HEATHER M. MCCARTHY**
**ASPEN J. COMPTON-HOYTE**
**DAYTON P. REED**
Deputy Prosecuting Attorneys
200 W. Front Street, Room 3191
Boise, ID 83702
(208) 287-7700
civilpafiles@adacounty.id.gov

*Attorneys for Appellee*
Landon Fox

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................................... iv

INTRODUCTION ........................................................................................................1

JURISDICTIONAL STATEMENT ...............................................................................2

ISSUES PRESENTED...................................................................................................2

PERTINENT AUTHORITIES .......................................................................................3

STATEMENT OF THE CASE......................................................................................3

SUMMARY OF THE ARGUMENT .............................................................................8

ARGUMENT ..............................................................................................................12

    I.     This Court should affirm the jury's verdict and the district court's resulting judgment. ..............................................................................12

         A.    The district court's rulings regarding evidence and conduct at trial were neither erroneous nor prejudicial............................................13

             1.    Williams's own questioning opened the door to evidence regarding the substance and quantity of his grievances. .....14

             2.    The district court properly allowed testimony regarding policy given that it was a central issue at trial....................16

             3.    Williams's letter regarding his intent to set up a lawsuit against the jail was admissible............................................17

             4.    Williams was able to present evidence and arguments regarding chilling. ................................................................19

             5.    Williams's "historical background evidence" was irrelevant to his claims, and Williams himself asked to strike such testimony. ......................................................................20

i

      6.      The district court's admonishment of Williams was appropriate. ........................................................................22

    B.    The district court properly instructed the jury. .............................23

        1.      The special verdict form asked the right questions and Williams's disagreement with the jury's answers does not provide a basis for reversal. ................................................24

        2.      The district court put the issue of the legitimacy of the grievances properly before the jury. ...................................25

        3.      The district court properly refused to instruct the jury that the First Amendment protects disrespectful language in a prison grievance. ..............................................................28

        4.      The district court's instruction regarding the burden of proof was accurate. ..................................................................31

        5.      The district court was not required to give an instruction defining what it means to be "chilled." ..............................32

        6.      The jury instructions did not suggest that Williams lied under oath. ........................................................................33

    C.    Deputy Fox was entitled to qualified immunity. ...........................34

        1.      The district court adhered to the rule of mandate. ..............34

        2.      The right to use disrespectful language in a grievance and have it processed was not clearly established. ....................36

        3.      Deputy Fox's reliance on policy is a non-issue. .................38

II.    Williams has not shown that he paid the filing fee from his first appeal. ......................................................................................................40

CONCLUSION ...................................................................................................42

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barranco v. 3D Sys. Corp.*,
 952 F.3d 1122 (9th Cir. 2020)................................................13

*Boyd v. City & Cnty. of San Francisco*,
 576 F.3d 938 (9th Cir. 2020)....................................... 13, 14

*Brewer v. Ray*,
 181 F. App'x 563 (7th Cir. 2006)................................... 26

*Brodheim v. Cry*,
 584 F.3d 1262 (9th Cir. 2009)........................................ 37

*Cavin v. McBride*,
 No. 2:20-CV-12470, 2024 WL 790402 (E.D. Mich. Jan. 31, 2024) . 26

*Cavin v. McBride*,
 No. 2:20-CV-12470, 2024 WL 787067 (E.D. Mich. Feb. 26, 2024)..27

*City of San Antonio v. Hotels.com, L.P.*,
 959 F.3d 159 (5th Cir. 2020)......................................... 41

*City of San Antonio v. Hotels.com, L.P.*,
 593 U.S. 330 (2021) ....................................................... 41

*Columbia Pictures Indus., Inc. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013)........................................ 38

*Coston v. Nangalama*,
 13 F.4th 729 (9th Cir. 2021)........................................... 23

*Dahne v. Richey*,
 139 S. Ct. 1531 (2019) ................................................... 37

*Dimick v. Schiedt*,
 293 U.S. 474 (1935) ....................................................... 35

*District of Columbia v. Wesby*,
 583 U.S. 48 (2018) ......................................................... 40

*George v. Edholm*,
 752 F.3d 1206 (9th Cir. 2014)........................................ 34

*Hall v. City of Los Angeles*,
    697 F3d 1059 (9th Cir. 2012)........................................................ 34

*Humphries v. Cnty. of Los Angeles*,
    554 F.3d 1170 (9th Cir. 2008)..................................................... 38

*Hung Lam v. City of San Jose*,
    869 F.3d 1077 (9th Cir. 2017)..................................................... 23

*Johnson v. Pac. Lighting Land Co.*,
    878 F.2d 297 (9th Cir. 1989)...................................................... 40

*Johnston v. Boyd*,
    No. 1:16-CV-3305, 2019 WL 11502734 (N.D. Ga. Jan. 28, 2019)... 27

*Johnston v. Boyd*,
    No. 1:16-CV-3305, 2019 WL 11502462 (N.D. Ga. Mar. 7, 2019) ... 27

*Lewis v. Guillot*,
    583 F. App'x 332 (5th Cir. 2014)................................................26

*Los Angeles Cnty. v. Humphries*,
    562 U.S. 29 (2010) .................................................................... 39

*Maben v. Thelen*,
    887 F.3d 252 (6th Cir. 2018)......................................................26

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
    637 F.3d 939 (9th Cir. 2011).....................................................14

*Milless v. Montana State Prison Infirmary*,
    No. CV-24-54, 2024 WL 5158362 (D. Mont. Dec. 18, 2024).......... 26

*Morales v. Fry*,
    873 F.3d 817 (9th Cir. 2017)...................................................... 35

*Obrey v. Johnson*,
    400 F.3d 691 (9th Cir. 2005)...................................................... 14

*Ohler v. United States*,
    529 U.S. 753 (2000) .................................................................. 14

*Pasley v. Conerly*,
    345 F. App'x 981 (6th Cir. 2009)............................................. 26, 27

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) .................................................... 23

*Perrotte v. Muntz*,
No. ED CV 07-01031, 2012 WL 13226608 (C.D. Cal. Oct. 1, 2012)
.................................................................................... 26

*Price v. Kramer*,
200 F.3d 1237 (9th Cir. 2000)........................................ 14

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................................... 38

*Richey v. Aiyeku*,
790 F. App'x 115 (9th Cir. 2020)................................... 37

*Richey v. Dahne*,
624 F. App'x 525 (9th Cir. 2015)................................... 36

*Richey v. Dahne*,
733 F. App'x 881 (9th Cir. 2018)................................... 37

*Ruiz v. Affinity Logisitics Corp.*,
667 F.3d 1318 (9th Cir. 2012).........................................26

*Spruill v. Gillis*,
372 F.3d 218 (3d Cir. 2004)........................................... 26

*Turner v. Safley*,
482 U.S. 78 (1987) .........................................................16

*United State v. 20832 Big Rock Drive*,
51 F.3d 1402 (9th Cir. 1995)......................................... 24

*United State v. Hernandez-Arias*,
757 F.3d 874 (9th Cir. 2014)......................................... 26

*United State v. Kellington*,
217 F.3d 1084 (9th Cir. 2000).........................................34

*United State v. Laurins*,
857 F.2d 529 (9th Cir. 1988)......................................... 14

*United State v. Layton*,
767 F.2d 549 (9th Cir. 1985)......................................... 18

*United State v. Shryock*,
342 F.3d 948 (9th Cir. 2003)......................................... 32

*Yagman v. Haspel*,
769 F. App'x 484 (9th Cir. 2019)................................... 41

**Statutes**

28 U.S.C. § 1291...................................................................................................2

28 U.S.C. § 1331...................................................................................................2

42 U.S.C. § 1983................................................................................................2, 5

**Rules**

F.R.A.P. 4 ............................................................................................................2

F.R.A.P. 39 ................................................................................................... 40, 41

F.R.C.P. 49...........................................................................................................6

F.R.C.P. 50...........................................................................................................8

F.R.C.P. 51...........................................................................................................8

F.R.E 401............................................................................................................16

F.R.E 403 ..................................................................................................... 18, 19

**INTRODUCTION**

This matter concerns the application—or lack thereof—of the First Amendment in the context of frivolous prison grievances.  In this case, a jury went to great lengths to decide factual issues that supported the ultimate conclusion that neither Plaintiff-Appellant Kent Williams's right to petition the government for redress of grievances nor his right to be free from retaliation under the First Amendment was violated by the actions that Defendant-Appellee Landon Fox, an Ada County Jail Deputy, took concerning specific grievances that Williams brought in January 2016, while he was incarcerated at the Ada County Jail in Boise, Idaho.

Williams urges this Court to take the extraordinary action of disregarding and upending the verdict of a fair and impartial jury and give him a new trial on his First Amendment claims based on various purported errors that he says the district court made before, during, and after his trial.  At bottom, however, the record shows that the district court did not err in any manner that would suggest that the jury verdict and resulting judgment should be disturbed on appeal.  This is because the First Amendment does not recognize any right for an inmate such as Williams to file frivolous grievances.  Once that sound proposition is accepted, the remaining dominos that makeup Williams's claims and the issues he raises on appeal fall.

# JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Williams's claims under the First Amendment pursuant to 42 U.S.C. § 1983. The district court entered an order and judgment disposing of all Williams's claims on November 28, 2022. (1-ER-18–36.)

Williams filed a notice of appeal on December 7, 2022, but the appeal was stayed pending resolution of his post-trial motion for relief that he filed on November 25, 2022. (2-ER-38–34; Order, Dkt. 4.) The district court entered a final order denying Williams's post-trial motion on June 29, 2023, which resolved all remaining issues. (1-ER-2–17.) Williams thereafter filed notice of intent to pursue his appeal on July 13, 2023. (Notice of Intent to Prosecute Appeal, Dkt. 6.) Accordingly, pursuant to F.R.A.P. 4(a)(4), this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

# ISSUES PRESENTED

I.     Should the Court disturb the jury's verdict and the district court's resulting judgment when: (A) the district court's rulings regarding evidence and conduct at trial were neither erroneous nor prejudicial; (B) the district court properly instructed the jury on the law; and (C) the district court accurately applied the facts as determined by the jury to the law when it determined that Deputy Fox was entitled to qualified immunity following trial?

II.     Should the Court find that the district court erred when it did not award Williams the filing fee from his first appeal even though Williams has not shown that he has paid such fee in the first place?

**PERTINENT AUTHORITIES**

All relevant constitutional and statutory authorities appear in the Addendum to this brief.

**STATEMENT OF THE CASE**

This case arises out of Williams's time as an inmate in the Ada County Jail while he was awaiting trial related to his commission of multiple armed robberies, based on his allegations that Deputy Fox violated his First Amendment rights through his handling of three grievances that Williams brought in January 2016. (2-ER-170–76.)

As illustrated in non-privileged correspondence dated January 10, 2016, that Williams sent to a third party, he was trying to develop a plan to manufacture a First Amendment lawsuit against Ada County or its officials related to his abuse of the grievance system, speculating on what his "payout" should be and stating: "I just don't want to waste my time if it's not winnable so I can -- so I can successfully sue." (4-ER-483:19–486:17.)

Just the next day, on January 11, 2016, Williams submitted two of the grievances at issue to Deputy Fox. (4-ER-474:11–478:24.)  Williams claimed that

3

the first grievance ("Grievance 1"), contained a complaint against an unnamed jail deputy based on his refusal to accept a prior grievance that Williams had submitted because it contained "disrespectful language."[1] (4-ER-474:11–475:15.) Deputy Fox picked up and reviewed Grievance 1 and determined that it did not raise any sort of legitimate issue and was solely used to hurl insults at jail staff. (*E.g.*, 4-ER-357:4–9.)

Later that same day, Williams submitted the second grievance ("Grievance 2"). Williams claimed that Grievance 2 contained a complaint against Deputy Fox based on his refusal to accept Grievance 1. (4-ER-478:5–17.) Upon review, Deputy Fox determined that, like Grievance 1, Grievance 2 did not raise any sort of legitimate issue and was solely used to insult jail staff. (*E.g.*, 4-ER-357:4–9.)

The next day, January 12, 2016, Williams submitted the third grievance ("Grievance 3"), which stated:

> THE DECISION/ACTION THAT I AM GRIEVING IS: of guard fox to throw away my outgoing mail. On 1/11/16 I put a grievance out my cell door for 7PM mail pick up. Fox took it, read it and refused to take it. It was left on the tier. At 7:15, 1/11/16, I then put out the cell door a grievance grieving fox refusing to take and process my mail (courts consider grievance legal mail). He took it, read it and said, "first chance I get at your neck. . ." and then tossed it in the air onto the tier where it was prosumably thrown away.

(6-ER-838.) Deputy Fox responded as follows:

---

[1] This prior grievance was not the subject of any of Williams's claims. (*See* 2-ER-170–76.)

> The grievances you have been submitting are not acceptable. You are not grieving any issues, you are making statements and calling deputies names and being disrespectful. You have already been written up for this issue. Do not continue to abuse the grievance system.
>
> You say that I said, "First chance I get at your neck". I never said any such thing. Please stop making false accusations.

(6-ER-839.) Unlike with Grievances 1 and 2, Williams appealed Deputy Fox's response to Grievance 3. (6-ER-839.) Deputy Fox's response was therefore reviewed by the on-shift supervisor, Sergeant Timothy Hillner, who determined that Deputy Fox's response was appropriate. (6-ER-839.)

In his operative pleading, Williams asserted First Amendment claims against Deputy Fox pursuant to 42 U.S.C. § 1983, claiming that Deputy Fox violated his right to petition the government for redress of grievances by failing to accept and process Grievances 1 and 2 and claiming that Deputy Fox violated his right to be free from retaliation by threatening bodily harm and warning of possible disciplinary action based on his abuse of the grievance system. (*See, e.g.*, 2-ER-170–76.)

The district court initially granted summary judgment in favor of Deputy Fox, concluding that: (1) Williams could not show that his grievances were legitimate petitions for redress that qualified for First Amendment protection; (2) Williams could not show that he engaged in conduct that would be protected

against retaliation; and (3) Deputy Fox was, as an independent basis for granting summary judgment, entitled to qualified immunity. (2-ER-145–63.)

Williams appealed and the Ninth Circuit reversed and remanded, finding that there were material factual disputes left to be resolved and, therefore, the district court had prematurely found that Deputy Fox was entitled to qualified immunity and erred in granting summary judgment. (2-ER-138–44.)

After remand, the district court notified the parties of its intent to rely on F.R.C.P. 49(a), which authorizes the district court to require the jury to return a special verdict in the form of written findings on the issues of fact presented at trial based on the questions submitted to it by the district court without returning a general verdict that declares the prevailing party. (2-ER-117–25.) The district court recognized that the case was well-suited for the special verdict format given the developing state of the relevant legal issues because it would allow it to clearly apply the facts, as determined by the jury, to the law in order to enter final judgment and, if the Ninth Circuit disagreed on the law in a subsequent appeal, it could nevertheless rely on the special verdict. (1-ER-20–22; 2-ER-117.) The parties had the opportunity to weigh in on the proposed jury instructions and special verdict form, an opportunity that Williams took full advantage of, and the district court fully considered the issues raised. (2-ER-82–116; 5-ER-631:1–675:18.)

The case proceeded to a four-day jury trial. The jury found that, without regard to the language contained in Grievances 1 and 2, they did not present a legitimate issue or seek a legitimate resolution. (2-ER-76.) It also found that Deputy Fox did not threaten Williams with bodily harm because of his grievances or threaten disciplinary action if Williams continued to file grievances. (2-ER-77–78.) It found that Deputy Fox merely warned Williams verbally about potential disciplinary action if he continued to use disrespectful language in his grievances and Williams's use of disrespectful language was a substantial or motivating factor behind such warning. (2-ER-78.) However, it also determined that Deputy Fox's warning was not sufficient to chill or silence a person of ordinary firmness from filing grievances and that Deputy Fox did not warn Williams about disciplinary action at all in responding to Grievance 3. (2-ER-79.)

The district court subsequently issued legal conclusions based on the jury's factual findings as set forth in the special verdict form. (1-ER-19–36.) It concluded that Williams's claim that Deputy Fox violated his right to petition based on his refusal to accept or process Grievances 1 and 2 failed based on the jury's finding that they did not present a legitimate issue or seek a legitimate resolution. (1-ER-23.) In further support of this conclusion, the district court alternatively found that Deputy Fox was entitled to qualified immunity because whether a direct claim under the right to petition existed in the first place was an

open question, any such right was not unqualified, and the permissible bounds for screening grievances in the context of such a right were also unclear.  (1-ER-23–32.)  The district court also concluded that Williams's retaliation claims failed based on the jury's finding that Deputy Fox never threatened bodily harm, never warned of disciplinary action in the event that Williams continued to merely use the grievance system, and to the extent that he did warn of disciplinary action in the event that Williams continued to use disrespectful language in grievances, such warning was not sufficient to chill or silence a person of ordinary firmness from filing grievances, which was an essential element of Williams's retaliation claims. 1-ER-33–35.)  In light of these findings and conclusions, the district court entered judgment in Deputy Fox's favor.  (1-ER-18, 35–36.)

Relying on F.R.C.P. 50 and F.R.C.P. 59, Williams sought post-trial relief (2-ER-40–44), which the district court painstakingly and thoroughly analyzed before denying on the merits (1-ER-2–17).  This appeal followed.

## SUMMARY OF THE ARGUMENT

As an initial matter, the jury's verdict and the district court's judgment must stand for two reasons that eclipse all other issues that Williams raises on appeal: (1) Williams's grievances were frivolous, and since there is no First Amendment right to file frivolous grievances, Deputy Fox's refusal to accept them did not violate Williams's rights; and (2)  Deputy Fox's actions did not constitute

8

retaliation, either because they were not motivated by any protected activity undertaken by Williams or because they lacked the chilling effect necessary to prove retaliation. In any event, the specific issues that Williams raises on appeal are without merit for the reasons summarized below.

First, contrary to Williams's contentions, the district court's evidentiary rulings were neither erroneous nor prejudicial and the district court also acted within its discretion in supervising the trial and it did so without leaving any impression of bias or partiality because:

(1) Williams introduced the topic of his grievance history during cross-examination, making it permissible for Deputy Fox to present additional evidence on the nature and quantity of those grievances.

(2) Evidence about jail policy governing grievances was central to the case, as the jury needed to determine whether a policy existed that permitted rejection of grievances containing disrespectful language and whether any such policy influenced Deputy Fox's actions.

(3) Williams's correspondence to a third party indicating his intent to manufacture a First Amendment lawsuit was properly admitted because it was relevant, and the district court undertook the necessary balancing analysis to conclude that its probative value outweighed the risk of any unfair prejudice.

(4) Williams's claim that he was improperly restricted from presenting evidence on the deterrent effect of the relevant policy is contradicted by the record, which shows that he was allowed to present evidence and arguments on this issue.

(5) Williams cannot complain of the exclusion of evidence related to his prior grievances to illustrate his dissatisfaction with the jail when he himself moved to strike such evidence.

(6) The district court's admonishment of Williams for using profanity in the courtroom was a reasonable exercise of judicial discretion and did not imply anything about the character of the language that he used in the grievances at issue.

Second, the district court's jury instructions also applied the appropriate legal standards and were neither misleading nor prejudicial, and Williams's arguments suggesting otherwise are without merit because:

(1) The special verdict form was carefully designed and Williams's complaint that the form did not favor his theory of the case is not a valid reason for reversal.

(2) The jury was correctly tasked with determining whether the grievances raised a legitimate issue and sought legitimate resolution and there was no basis in law or fact to require that the jury determine whether they were "non-frivolous" as opposed to "legitimate."

(3) There was no reason to instruct the jury that disrespectful language in grievances is protected speech because both Williams and Deputy Fox agreed to omit this instruction, and the jury was specifically instructed not to consider the language of the grievances when determining the substance of their content.

(4) The district court's instructions accurately reflected the assignment of burdens of proof and to conclude otherwise would have the effect of improperly putting the burden of proving elements of Williams's claims on Deputy Fox.

(5) There was no need to instruct the jury on what it means to "chill" someone, as the term is commonly understood, especially when the specific question at issue on the special verdict form is read in full.

(6) The jury instructions did not suggest that Williams lied under oath and any discrepancy about who Williams submitted Grievance 3 to was of no consequence because Deputy Fox's subsequent response to it was the only relevant issue.

Third, the district court also properly applied the facts, as determined by the jury, to the law, specifically as it relates to the conclusion that Deputy Fox was entitled to qualified immunity and Williams has not shown otherwise because:

(1) The Ninth Circuit's decision in the first appeal did not preclude a post-trial grant of qualified immunity once the factual disputes were settled.

(2) At the time of the incident, no binding precedent clearly established that an inmate had the right to submit grievances with disrespectful language and have them processed.

(3) The jail policy regarding grievances was an issue that was fully raised and developed below, and this Court may affirm the judgment on any basis supported by the record, including Deputy Fox's reliance on policy.

Finally, although it was proper for Williams to seek an award for the filing fee associated with his first appeal in the district court, the record does not show that he actually paid the fee that he is now trying to recoup.

## ARGUMENT

### I. This Court should affirm the jury's verdict and the district court's resulting judgment.

First, there is no First Amendment right to file frivolous prison grievances. The jury determined that Grievances 1 and 2 did not present any legitimate issue or seek legitimate resolution of such issue. In other words, it determined that Grievances 1 and 2 were frivolous. It follows that Deputy Fox could not have violated Williams's right to petition the government for redress of grievances by refusing to accept or process Grievances 1 and 2. As a result, Williams's right-to-petition claim fails as a matter of law.

Second, a retaliation claim under the First Amendment requires a plaintiff to establish that he exercised a right protected by the First Amendment and that,

because of that, an official took adverse action against the plaintiff that would be sufficient to chill a person of ordinary firmness from exercising that right. As to Williams's retaliation claims, the jury determined that, in some instances, Deputy Fox did not take any adverse action as a result of Williams engaging in protected activity in the first place and, in other instances, that the adverse action that Deputy Fox did take did not have the requisite chilling effect. As a result, Williams's retaliation claims fail as a matter of law, too.

The various issues that Williams raises on appeal, each of which are discussed in logical order below, are insufficient to undermine confidence in the jury's verdict or the district court's resulting judgment, whether those issues arise out of the district court's rulings regarding evidence and conduct at trial, its jury instructions and use of the special verdict form, or its application of the law to the facts as determined by the jury.

A. **The district court's rulings regarding evidence and conduct at trial were neither erroneous nor prejudicial.**

The district court's evidentiary rulings are reviewed for abuse of discretion. *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020). If a district court's evidentiary ruling was in error, reversal is only appropriate if the error was prejudicial. *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009). While prejudice is generally presumed, there can be no finding of prejudice

if "it is more probable than not that the error did not materially affect the verdict." *Id.* (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)).

The district court also has broad discretion to supervise trials and its behavior during a trial only warrants reversal if the court abuses that broad discretion and the record establishes "actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality. *Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000) (quoting *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988)).

### 1. Williams's own questioning opened the door to evidence regarding the substance and quantity of his grievances.

Williams complains that the district court allowed Deputy Fox to introduce evidence regarding the substance and quantity of grievances outside of the specific grievances at issue in the case. Such a complaint cannot provide a basis for reversal, however, given that Williams invited the very thing of which he now complains.

A party who makes arguments or introduces evidence at trial before introduction by the opposing party opens the door to further related evidence coming in and waives the right to challenge the admissibility of that evidence on appeal. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 954 (9th Cir. 2011) (citing *Ohler v. United States*, 529 U.S. 753, 757–59 (2000)).

Here, Williams's cross-examination of Lieutenant Justin Ivie, a defense witness, incorporated a premise and assumption that his grievances merely contained "naughty" words that a reasonable person would not find objectionable. For example, Williams asked how an inmate could appeal a decision to not accept a grievance, "if a guard makes a determination that, boy, this -- this is frivolous.  I think a naughty word here has rendered this grievance frivolous, doesn't file it," and whether the grievances that Lieutenant Ivie reviewed contained "language a reasonable person could interpret as disrespect?"  (5-ER-563:5–7, 568:23–24.)  He also prefaced a question by stating that "quite a few of my grievances, some staff just simply -- even with subjective disrespectful language, still just answered the merits and actually ignored the language."  (5-ER-572:5–7.)

Similarly, Williams's cross-examination of Lieutenant Ivie also intentionally pointed to the number of grievances that he filed.  Williams stated: "You responded to quite a few grievances of mine, haven't you?" (5-ER-566:12–13.) There was also this exchange:

> Q. So you're somewhat aware of grievances I filed during my time frame, there for nine months, I guess it was?
>
> A. Yes.
>
> Q. Would you say there was a lot of grievances with language a reasonable person could interpret as disrespect?
>
> A. There was a significant amount.

(5-ER-568:20–25.)

After this questioning and the assumptions that it implied, Deputy Fox was entitled to present evidence regarding what Williams's grievances truly looked like to rebut the notion that they merely contained "naughty" words that a reasonable person would find benign. Williams similarly made the number of grievances that he filed fair game. Deputy Fox was therefore entitled to clarify that issue.

Accordingly, once Williams opened the door, he invited Deputy Fox to introduce further evidence on these matters and he waived any right to challenge the district court's allowance regarding the same.

### 2. The district court properly allowed testimony regarding policy given that it was a central issue at trial.

Williams argues that evidence about jail policy regarding grievances was irrelevant and similarly argues that evidence regarding the reasons behind such policy was inadmissible, asserting that such evidence could only go to the factors in *Turner v. Safley*, 482 U.S. 78, 90 (1987), for determining whether a constitutional right can be curtailed in a jail or prison, which he says would be inappropriate to consider in this case. But this evidence, at the very least, satisfies the low threshold for relevance under F.R.E. 401 and was admitted for purposes beyond what Williams believes it was admitted for.

Whether Deputy Fox was relying on policy when he did not accept Grievances 1 and 2 was a central question for the jury to determine before the district court could address qualified immunity. Even Williams recognizes that

16

"[w]hether or not Fox followed policy was a very contested question, encompassing a significant portion of the trial . . . ."  (Appellant's Pro Se Suppl. Opening Br. 28, Dkt 49.)

When Williams's grievances challenging the policy were presented to show that Williams knew that the policy existed, the district court instructed the jury that these grievances were "relevant to the limited purpose of whether a policy existed that allowed the guard to reject a grievance because of its vulgar language . . . ." (4-ER-473:5–7.)  After several such grievances were presented to the jury, Williams admitted, "I think, at this point, we've established that there's a policy and that I've grieved it," ending the presentation of grievances offered for that proposition.  (4-ER-472:24–25.)  Additionally, where the existence and content of a policy are factual issues for the jury to decide, evidence related to the reasons for that policy is relevant because it informs factual issues related to reliance on it. (*See* 5-ER-552:21–25.)

The district court correctly ruled that this evidence was relevant and admissible.

### 3. Williams's letter regarding his intent to set up a lawsuit against the jail was admissible.

Williams takes issue with the district court's ruling regarding a letter that he wrote while incarcerated in which he described his intent to set up a lawsuit against

the jail arising out of its grievance process, arguing that it should have been inadmissible under F.R.E. 403.

A district court, the decisions of which depend on some degree of finality given their impact on trial proceedings, has wide latitude and discretion to make rulings under Rule 403 because it is in the best position to assess the impact and effect of evidence while presiding over such proceedings and to make case-by-case determinations in light of the surrounding facts, circumstances, and issues at play. *United States v. Layton*, 767 F.2d 549, 553–55 (9th Cir. 1985).

Here, the district court made a thorough ruling that the letter was relevant as to whether the grievances at issue were legitimate because it explained Williams's motivation for filing them, but was not admissible for other purposes. (1-SER-034–37.) This ruling was reiterated on the record at trial. (4-ER-419:10–420:4.)

When the grievances themselves were not available as evidence, evidence of Williams's motivation for filing them could shed light on whether they raised a legitimate issue and sought a legitimate resolution, or whether they instead were calculated to be refused in an attempt to manufacture a lawsuit. At trial, the district court reiterated that the letter was relevant to the primary issue at hand and its probative value was not substantially outweighed by the danger of unfair prejudice: "They are certainly prejudicial to the plaintiff, but that's why the defendant wants them in, and they're not substantially unfairly prejudicial." (4-ER-419:22–420:4.)

This was a measured and thorough ruling within the wide latitude and discretion that the district court had to address matters under Rule 403 and Williams has not made the difficult showing that the district court abused its discretion in allowing the letter to be admitted.

### 4. Williams was able to present evidence and arguments regarding chilling.

Williams claims that the district court improperly hamstrung his ability to present evidence as to the issue of chilling that was relevant to his retaliation claim, but the record shows that Williams was permitted to present extensive evidence and arguments on this point.

Williams wanted to explain to the jury that part of the discipline an inmate faces for violating policy related to the grievance process includes movement to a discipline cell, which necessitates a strip search. He was allowed to present that testimony, explaining to the jury that "the average person would probably feel [the strip search] is very violative, if you will." (4-ER-452:22–453:1.) He argued that he also wanted the jury to know about the accompanying cavity search, to show the true chilling effect. (4-ER-447:15–19.) Williams was able to express this to the jury as well. In his closing argument, while discussing Question No. 21 on the special verdict form, Williams explained:

> That's why you have a disciplinary process, to chill behavior. I would just think the very fact that if you use a naughty word in a grievance, part of that process is you go to the shower stall and have to bend over

19

and spread 'em. I think that would be enough to chill a person of ordinary firmness . . . .

(6-ER-731:25–732:10; *see also* 6-ER-711:18–22 ("And you say one wrong thing, what happens? You got to bend over and spread 'em. So, yeah, I can quite imagine that a lot of people did not want to file grievances in that jail . . . .").)

Again, the point is largely moot given the jury's finding that Williams's grievances did not raise a legitimate issue or seek legitimate resolution, as the consequence of such conclusion is that the retaliation claim fails at the outset before ever reaching the chilling question. Regardless, the record shows that Williams has no factual basis to claim that he was improperly prevented from presenting evidence related to chilling.

### 5. Williams's "historical background evidence" was irrelevant to his claims, and Williams himself asked to strike such testimony.

Williams sought to introduce evidence at trial that would purportedly illustrate his displeasure with the jail, including evidence of and related to grievances that he raised prior to those at issue in the case; he believed this evidence would show the jury why he became frustrated enough to resort to submitting vulgar insults through the grievance system. (3-ER-214:6–24.) The district court had already ruled in limine that this evidence was inadmissible because it did not relate to Deputy Fox or the claims that would be presented at

trial.  (1-SER-058–59.)  The district court did give Williams the option of revisiting the issue if it became relevant later on.  (3-ER-215:17–25.)

Later on, Williams did introduce evidence of a prior grievance without objection.  (4-ER-370:1–371:4.)  But when Williams realized that he was opening the door to Deputy Fox also being able to discuss these prior grievances—and recognizing that he could not establish relevance related to them—Williams made the tactical choice to move the district court to strike prior grievance and testimony related to it, which the district court granted.  (4-ER-378:6–379:18.)  When Williams himself asked to strike "historical background evidence" already admitted into evidence through his own doing, he cannot now claim the district court erred in not admitting it.

Regardless, the reason why Williams chose to use the grievance system to communicate vulgar insults does not change the fact that the grievances at issue did not actually communicate any legitimate issue or seek legitimate resolution as the jury found.  (2-ER-76.)  The jury was tasked with deciding the content of Grievances 1 and 2 as it related to their legitimacy, regardless of the specific vulgarities that may have been included therein.  The reasons behind the vulgarities—Williams's purported displeasure with the jail—were irrelevant and would not have changed the outcome at trial.

Accordingly, the district court did not err, and Williams suffered no prejudice as it relates to the district court's rulings regarding historical background evidence.

### 6. The district court's admonishment of Williams was appropriate.

Williams complains of the district court's reminder to him that he need not refer to the number of grievances he filed as a "shitload" in front of the jury, because if such language cannot be used in a courtroom, then the jury could infer that it was also unacceptable to use in a grievance. This does not warrant reversal, however.

As the district court recognized, language used in the grievances was never prevented from coming into evidence, and instructing Williams to not use the word "shitload," which was never used in any of the grievances in evidence, was a wholly different matter that was well within its discretion to control the conduct of the trial. (4-ER-347:5–349:3.) In any event, Williams does not point to any part of the record that would establish that this exercise of discretion amounted to actual bias or left the jury with an abiding impression of advocacy or partiality on the district court's part.

Williams's failure to identify this evidence makes sense, however, since the district court subsequently offered to provide the jury with a limiting instruction that would have reminded them that anything it might say during trial, including

22

the admonishment at issue, could not indicate whether the district court had any opinion on the merits or eventual outcome of the case one way or another and that the district court's discretion to prohibit vulgarity in its courtroom did not inform or otherwise effect the merits of the case.[2] (4-ER-351:15–352:5.) Williams declined the district court's offer initially and did not ever follow up on it. (*E.g.*, 4-ER-352:6–19.)

Therefore, the district court's admonishment was an appropriate exercise of its discretion and, regardless, reversal on this basis is not warranted.

### B. The district court properly instructed the jury.

Whether the district court's jury instructions accurately state the law is reviewed *de novo*, while its formulation of the jury instructions is reviewed for abuse of discretion with the instructions to be considered as a whole to determine whether they adequately cover the issues presented and are not misleading. *Coston v. Nangalama*, 13 F.4th 729, 732 (9th Cir. 2021) (quoting *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1085 (9th Cir. 2017)); *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc).

---

[2] This offered limited instruction was in addition to Instruction Nos. 3 and 4, which were given to the jury, and which clearly instructed them as to what was and was not evidence to be considered in the case. (2-ER-47–48.)

**1. The special verdict form asked the right questions and Williams's disagreement with the jury's answers does not provide a basis for reversal.**

"The district court has broad discretion in deciding whether to send the case to the jury for a special or general verdict." *United States v. 20832 Big Rock Drive*, 51 F.3d 1402, 1408 (9th Cir. 1995). "This discretion extends to determining the content and layout of the verdict form, and any interrogatories submitted to the jury, provided the questions asked are reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment." *Id.*

The special verdict form covered the necessary contingencies, such as reliance on policy, whether the grievances raised a legitimate issue and sought a legitimate resolution, and if neither of these applied, whether Williams met his burden of proof on the factual elements of his First Amendment claims. These alternative grounds for judgment for or against Williams represented in the questions were appropriate, as once the facts are decided the district court would apply them to render a verdict, and so there needed to be questions as to the necessary facts for both Williams's causes of action as well as Deputy Fox's defenses. Williams's arguments suggest he would have preferred the district court only ask the jury questions regarding his theory of the case and ignore Deputy Fox's. While this would be convenient for Williams, it would be inappropriate.

Williams takes issue with the jury's determinations of some of the factual disputes, pointing out the evidence and testimony favorable to him that he would have preferred the jury relied upon. Nevertheless, it is the jury's prerogative to make factual determinations, including on the credibility of witnesses and the weight of evidence. If Williams's evidence and testimony were unpersuasive, then that does not mean the jury was unreasonable. Nor does it mean that the district court was somehow biased towards Deputy Fox. The fact that Deputy Fox prevailed is not the result of unfairness. The district court prepared a special verdict form that allowed for the possibility that either side would receive the jury findings that would lead to a favorable judgment, and it was up to the jury to decide what testimony and evidence it found persuasive. It just so happened that this time the jury determined certain facts that meant Deputy Fox would prevail. That is the result of the trial, not the result of unfairness or judicial bias.

Accordingly, the form and use of the special verdict in this case was appropriate and the jury's verdict cannot be disturbed simply because Williams does not like the jury's determinations based on the evidence presented.

### 2. The district court put the issue of the legitimacy of the grievances properly before the jury.

Williams argues that it was improper for the district court to ask the jury whether his grievances were legitimate. He contends that the jury should have decided whether his grievances were "non-frivolous" and that "legitimate" is not a

synonym for "non-frivolous."  This matter is not appropriate for consideration on appeal and even if it was, the district court did not err by putting the issue of the legitimacy of Williams's grievances before the jury.

An issue is waived on appeal if the argument was not sufficiently raised to permit the district court to rule on it.  *United States v. Hernandez-Arias*, 757 F.3d 874, 883 (9th Cir. 2014) (quoting *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012)).  Here, contrary to his assertion, Williams did not take issue with the district court's use of "legitimate" over "non-frivolous," he simply acknowledged that the district court had been using the former term but took the position that frivolity and legitimacy were the "same thing," the exact opposite of what he now argues.  (2-ER-83–84; Appellant's Opening Br. 18 n.3, Dkt. 38.)

In any event, in the context of prison grievances, courts have both explicitly and implicitly recognized that a legitimate grievance is synonymous with a non-frivolous grievance.  *Maben v. Thelen*, 887 F.3d 252, 264–65 (6th Cir. 2018) (quoting *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)); *Lewis v. Guillot*, 583 F. App'x 332, 333 (5th Cir. 2014); *Brewer v. Ray*, 181 F. App'x 563, 565 (7th Cir. 2006); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Milless v. Montana State Prison Infirmary*, No. CV-24-54, 2024 WL 5158362, at *4 (D. Mont. Dec. 18, 2024); *Perrotte v. Muntz*, No. ED CV 07-01031, 2012 WL 13226608, at *10 (C.D. Cal. Oct. 1, 2012); *Cavin v. McBride*, No. 2:20-CV-12470,

2024 WL 790402, at *9 (E.D. Mich. Jan. 31, 2024), report and recommendation adopted, 2024 WL 787067 (E.D. Mich. Feb. 26, 2024); *Johnston v. Boyd*, No. 1:16-CV-3305, 2019 WL 11502734, at *6 (N.D. Ga. Jan. 28, 2019), report and recommendation adopted, No. 1:16-CV-3305, 2019 WL 11502462 (N.D. Ga. Mar. 7, 2019).

For example, in *Pasley v. Conerly*, the Sixth Circuit addressed whether inmates' mere threats to file grievances constituted protected activity under the First Amendment. 345 F. App'x at 984. It recognized that because "prisoners do not have a protected right to file <u>frivolous</u> grievances," such threats are only "arguably protected" if "the prisoners threatened to file <u>legitimate</u> grievances . . . ." *Id.* at 985 (emphasis added).

Here, the district court instructed the jury that "[g]rieving a jail policy or a constitutional right is a legitimate issue," and the jury proceeded to conclude that neither of the grievances at issue raised a "legitimate issue," or sought "legitimate resolution of that issue." (2-ER-68, 76.) Whether the grievances presented any "legitimate issue," was a factual issue that the jury determined, which supported the ultimate legal conclusion that the grievances were frivolous and, thus, not subject to First Amendment protection.

Therefore, although this Court should consider this issue waived on appeal, the record nevertheless demonstrates that the jury did in fact decide whether

Williams's grievances were "non-frivolous" because it addressed whether they raised a legitimate issue or sought legitimate resolution of such an issue. To try to draw a distinction between these terms is to grasp at straws.

> **3. The district court properly refused to instruct the jury that the First Amendment protects disrespectful language in a prison grievance.**

Williams argues that the district court erred by failing to grant his repeated requests to instruct the jury that the First Amendment protects disrespectful language in a grievance. But when the district court proposed such an instruction, Williams himself supported removing it.

The proposed instruction included the following language: "An inmate has the right to engage in First Amendment activity, including the filing of a grievance or using language in a grievance that might be considered disrespectful." (5-ER-638:22–25.) Williams objected to this instruction, along with two other similar instructions, on the grounds that it would not be appropriate to so instruct the jury when the trial was using the special verdict form format, where the jury was to make specific factual determinations only, and the district court would then apply the law to the facts. (5-ER-635:9–24.) In objecting, Williams joined Deputy Fox, who made the same objection. (5-ER-633:17–24.) The district court "agreed with the parties" and removed instructions regarding "the application of the facts to the law." (6-ER-683:15–18.) Thus, jury instruction language stating that an inmate

has a First Amendment right to use disrespectful language in a grievance was omitted at the joint request of both parties because it was not necessary for the jury to make the factual determinations in the special verdict form.

Williams's argument on this point is built entirely on a single, out-of-context statement by the district court about "an issue for the jury to decide." (Appellant's Opening Br. 37–39, Dkt. 38.) But Williams's presentation of this snippet of a longer exchange, out of context, misrepresents what the district court was trying to explain to Williams. The district court went on to explain that whether there was a policy in effect allowing a prison official to reject a grievance was a question for the jury, not whether such a policy comports with the First Amendment:

> THE COURT: You're making -- you're making good closing argument. But the issue of what the policy is is something the jury is going to determine, and then they will apply their decision to these questions. I can't possibly cover every possible scenario out there.
>
> MR. WILLIAMS: Well, that's not every possible. It's only one question I'm asking to be included.
>
> So does the -- does the Court believe that the law does allow a guard -- let's forget about policy, but just the law without the qualified immunity factors -- does the law allow a guard at the cell door to take a grievance and determine that there's unnecessary language in there?
>
> THE COURT: I'm telling you that's an issue for the jury to decide.
>
> MR. WILLIAMS: The matter of the law on that?
>
> THE COURT: No. Whether or not that is the policy in effect. That's what this -- that's what the Ninth Circuit said I should have given to the jury, is the -- is that type of a question. And I'm doing that. So your objection is noted, but I'm not making any changes.

> *Richey* covers disrespectful language; it doesn't cover legitimacy of the grievance.

(5-ER-645:2–23 (emphasis added).)

The special verdict form belies Williams's argument that the lack of a First Amendment instruction caused the jury to believe that disrespectful language alone caused his grievances to lack legitimacy. However, the form expressly instructed the jury to ignore the language Williams used in the grievances when it was instructed to determine whether the grievances presented a legitimate issue and sought a legitimate resolution. (2-ER-76.)

Contrary to Williams's contention, the district court acknowledged that, as a matter of law, disrespectful language in a grievance is protected by the First Amendment (2-ER-152; 5-ER-656:24–657:13), although the district court found that Williams's grievances failed to qualify as petitions for redress in the first instance based on the jury's verdict (1-ER-32).

As Deputy Fox, Williams, and the district court all agreed, it was not necessary for the jury to be instructed on whether the First Amendment protects certain language in a grievance when the jury would not apply the law to the facts in this trial. The district court therefore properly refused to instruct the jury that the First Amendment protects disrespectful language in a prison grievance.

### 4. The district court's instruction regarding the burden of proof was accurate.

In addition to the burdens that the district court assigned to Deputy Fox in Instruction No. 18 (2-ER-64),Williams argues that Deputy Fox, the Defendant, should have also borne the burden of proof as to several elements of Williams's own claims, specifically those encompassed in Question Nos. 1, 9, 10, 11, and 12. But Williams is wrong for the following reasons.

First, the answer to Question No. 1, which asked if Deputy Fox was an employee of the Ada County Jail on January 11 and 12, 2016, was marked as "YES," based on the parties' stipulation, which the jury was informed of. (2-ER-75; 5-ER-640:17–25; 6-ER-699:10–14.)

Second, the issue presented by Question No. 9, which asked whether the grievances at issue presented a legitimate issue and sought a legitimate resolution of that issue, without regard to the language contained therein, was Williams's burden to bear because, as the Plaintiff, he was the one who had to show that he engaged in activity protected by the First Amendment, which is the threshold element of his claims. (2-ER-76.) It was not Deputy Fox's burden to prove a negative as to an element of Williams's own claim.

Third, the issues presented by Question No. 10, which asked whether Deputy Fox refused to accept or process the grievances at issue because he knowingly or purposely wanted to stop Williams from being able to raise

31

complaints regarding legitimate issues, as well as the issues presented by Question Nos. 11 and 12, which asked whether Deputy Fox ended the grievance process, were also Williams's burden to bear because they, too, were elements of Williams's claims against Deputy Fox, as opposed to elements of Deputy Fox's defenses to those claims. (2-ER-77.)

At the end of the day, Williams, as the Plaintiff, had the burden of proving all the elements of his claims, which Instruction No. 18 accurately reflected, and the jury's verdict and the resulting judgment cannot be disturbed on this basis.

### 5. The district court was not required to give an instruction defining what it means to be "chilled."

Williams states that the district court erred by not providing the jury with an instruction defining what it means to be "chilled" for purposes of a First Amendment retaliation claim.

A district court need not define terms that are readily understandable or otherwise common to the jury. *United States v. Shryock*, 342 F.3d 948, 986–87 (9th Cir. 2003). This is especially true when the appellant takes issue with the district court declining to provide a definition without the support of any case law. *Id.*

Here, Williams provides no case law for the proposition that the district court had to define "chill," and this is unsurprising. "Chill" is a term readily understandable to the jury, particularly in the context of the instructions and special

32

verdict form as a whole—which asked whether a threat was "sufficient to chill <u>or silence</u> a person of ordinary firmness."  (2-ER-78–80 (emphasis added).)

Accordingly, there was no error on the part of the district court when it declined to provide the jury with a definition instruction on this point.

### 6. The jury instructions did not suggest that Williams lied under oath.

Williams argues that the wording of Instruction No. 19 amounts to an improper comment by the district court that suggests that Williams lied under oath because it identified a particular grievance, Grievance 3, as having been submitted by Williams to Deputy Fox (2-ER-65), when Williams claims that he testified that he did not submit that particular grievance to Deputy Fox.

Instruction No. 19 was simply intended to orient the jury and help keep the grievances that formed the basis of Williams's claims straight.  (2-ER-65.) Grievance 3, even if not submitted to Deputy Fox, concerned Deputy Fox's conduct and Deputy Fox eventually received, reviewed, and responded to it.  (2-ER-79–80.)  All that mattered was what Deputy Fox's response to Grievance 3 was, not whether he was the one to initially receive it from Williams upon submission.

The district court never told or even suggested to the jury, whether through Instruction No. 19 or otherwise, that Williams lied and this minor discrepancy about to whom Grievance 3 was submitted had no bearing on the outcome of the

33

case.  Accordingly, this issue does not warrant undermining the jury's verdict or the resulting judgment.

### C. Deputy Fox was entitled to qualified immunity.

A district court's decision on qualified immunity, including as to whether a particular right was clearly established at the time of the alleged violation, is reviewed *de novo*.  *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014).

### 1. The district court adhered to the rule of mandate.

As a procedural matter, Williams first argues that the district court's grant of qualified immunity to Deputy Fox violated the rule of mandate.  The rule of mandate, however, is not as broad as Williams makes it out to be, especially in the context of a post-trial grant of qualified immunity.

The district court may decide anything not foreclosed by the appellate court's mandate on remand.  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).  The rule of mandate "requires respect for what the higher court decided, not for what it did *not* decide."  *Id.* (cleaned up) (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)).  Even when an appellate court holds that a lower court erred in granting summary judgment on the basis of qualified immunity due to an unresolved genuine factual dispute, the appellate court's mandate does not require—or allow—the lower court to pass the question of qualified immunity wholly onto the jury.

34

> [Q]ualified immunity was conceived as a summary judgment vehicle, and the trend of the Court's qualified immunity jurisprudence has been toward resolving qualified immunity as a legal issue before trial whenever possible. This approach presents a dilemma when, as here, a qualified immunity case goes to trial because disputed factual issues remain. . . . Nonetheless, comparing a given case with existing statutory or constitutional precedent is quintessentially a question of law for the judge, not the jury. A bifurcation of duties is unavoidable: only the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved.

*Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (citing *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

Here, this Court held that the district court erred in granting summary judgment in favor of Deputy Fox because there was "a genuine dispute of material fact as to whether Fox violated Williams's First Amendment rights to petition and against retaliation when Fox rejected Williams's two grievances and warned of disciplinary action." (2-ER-139.) Therefore, this Court concluded that the district court erred by granting summary judgment in favor of Deputy Fox on the basis of qualified immunity because the genuine factual dispute made it "unclear whether qualified immunity should apply <u>at this stage of the case</u>." (2-ER-139 (emphasis added).) The district court's grant of qualified immunity came after the case was tried to a jury. (1-ER-21–22.) This Court did not hold that Deputy Fox would never be entitled to qualified immunity once the genuine factual dispute was resolved. (*See* 2-ER-139.) After the jury fulfilled its fact-finding mission, the

district court was free to apply those facts to the law without implicating—let alone violating—the mandate rule.

Accordingly, the district court's grant of qualified immunity to Deputy Fox following the jury trial was proper.

### 2. The right to use disrespectful language in a grievance and have it processed was not clearly established.

As to substance, Williams next argues that the district court's grant of qualified immunity to Deputy Fox was improper because the right to use disrespectful language in a grievance and have it processed was clearly established at the time of the conduct at issue, which occurred on January 11, 2016. (4-ER-474:11–478:7.) Williams's argument is premised on a misstatement or misunderstanding of the relevant issue, which is that the right to petition the government for redress of grievances is not so broad as to require the acceptance or processing of any and all prison grievances, such as those that are not legitimate, regardless of whether they contain disrespectful language.

In any event, the right to use disrespectful language in a grievance and have it processed was not clearly established as of January 11, 2016. In fact, the Ninth Circuit expressly noted just a month prior, on December 8, 2015, that it was declining to "consider whether the law in our circuit is clearly established that 'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" *Richey v. Dahne*, 624 F. App'x 525, 526 n.3 (9th Cir.

36

2015) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)).  It took until 2018 for the Ninth Circuit to clarify the breadth of *Brodheim* but, in doing so, it nevertheless affirmed the district court's grant of qualified immunity to the prison official on summary judgment and recognized that "a prison official merely requesting that a prisoner rewrite a grievance is not a First Amendment violation." *Richey v. Dahne*, 733 F. App'x 881, 883 (9th Cir. 2018), *cert. denied*, *Dahne v. Richey*, 139 S. Ct. 1531 (2019).  The Ninth Circuit then specified for the first time, more than two years after the events at issue in this case, that the violation occurs when the official subsequently refuses to allow the grievance to proceed through the administrative process after the prisoner refuses to rewrite it as requested.  *Id.*

Additionally, in relying on the unpublished decision in *Richey v. Dahne*, Williams ignores the fact that three Justices dissented from the Supreme Court's denial of the prison official's petition for a writ of certiorari in that case, opining:

> Even if a prison must accept grievances containing personal insults of guards, <u>a proposition that is not self-evident</u>, does it follow that prisons must tolerate veiled threats?  I doubt it, but if the Court is uncertain, we should grant review in this case.

*Dahne v. Richey*, 139 S. Ct. 1531 (2019) (Alito, J., dissenting) (emphasis added).

Furthermore, this Court recognized even more recently in another First Amendment case brought by Richey that it is not clearly established that "merely refusing to accept a grievance for processing" is a First Amendment violation. *Richey v. Aiyeku*, 790 F. App'x 115, 116 (9th Cir. 2020) (citing *Brodheim*, 584

F.3d at 1270–71) (reversing district court's denial of qualified immunity on First Amendment retaliation claim).

Accordingly, because the right to use disrespectful language in a prison grievance and have it processed was not clearly established as of January 11, 2016, the district court's grant of qualified immunity to Deputy Fox was proper.

### 3. Deputy Fox's reliance on policy is a non-issue.

In his final attempt to argue that the district court's judgment should not stand, Williams posits that it got at least one thing right—declining to rely on Deputy Fox's adherence to policy in issuing judgment in his favor. Without citation to any supporting authority, Williams opines that this means that Deputy Fox cannot rely on the policy on appeal. While that is an incorrect statement on the law, the point is moot or at least irrelevant, given the fact that Williams's non-legitimate "grievances" did not constitute a petition for redress.

An appellate court may affirm a judgment "on any ground raised below and fairly supported by the record," even if it is different than what the district court relied on. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013)). More specifically, even if the district court does not reach the issue of qualified immunity, this Court may do so where the issue is clear from the record. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1201 (9th Cir. 2008), as

amended (Jan. 30, 2009), *rev'd and remanded on other grounds*, *Los Angeles Cnty. v. Humphries*, 562 U.S. 29 (2010).

Here, the policy and Deputy Fox's reliance on it, as well as all the issues related thereto, were raised and fully developed in the record below. (*E.g.*, 1-ER-11, 20; 2-ER-66, 75–81, 98–99; 3-ER-238:11–242:19, 263:19–267:2, 277:5–295:5, 332:22–335:20; 4-ER-353:18–355:23, 358:18–361:12; 6-ER-734:12–740:5.) Thus, this Court is free to grant qualified immunity on the basis of Deputy Fox's reliance on policy, where all necessary factual determinations were made and contained within the record, even if the district court did not ultimately rule on those specific grounds.

The district court's judgment stands regardless based on the fact that there is no right to file frivolous grievances under the First Amendment in the first place and based on Deputy Fox's entitlement to qualified immunity on different grounds. Accordingly, while Deputy Fox is entitled to rely on the policy on appeal, there is no need for him to do so and Williams's argument on this point is of no consequence as a result.

Even so, the fact that Deputy Fox was acting pursuant to policy when he refused to accept the grievance entitled him to qualified immunity as an alternative basis for affirmance. As explained in Section I.C.2, no controlling case in existence on January 11, 2016, would have directed a jail official to ignore jail

policy regarding grievances containing disrespectful language or not raising a legitimate issue or seeking a legitimate resolution at that time.[3]

No controlling case decided prior to January 11, 2016, stood for the proposition that it would violate an inmate's First Amendment rights to not process a grievance that contained disrespectful language or was devoid of a legitimate issue and legitimate effort to seek resolution—Williams's citations to later-decided, non-binding cases notwithstanding. Thus, Deputy Fox had no reason to believe that the policy that he followed on January 11, 2016, was patently or obviously unconstitutional, such that he should have been compelled to refuse to comply with it. (*See* 1-SER-010–14.)

The jury found that Deputy Fox relied on policy as a substantial or motivating factor or reason for not accepting or processing Williams's non-legitimate and disrespectful "grievances." (2-ER-76–77.) This entitled Deputy Fox to qualified immunity on this alternative ground, and this Court may affirm the district court on this alternative basis.

## II.    Williams has not shown that he paid the filing fee from his first appeal.

The district court's denial of a motion for costs related to an appeal filing fee under F.R.A.P. 39(e) is reviewed for abuse of discretion. *Johnson v. Pac. Lighting*

---

[3] The precedent relied upon to defeat qualified immunity must clearly state the rule cited; it is not enough that the rule is merely "suggested" by then-existing precedent. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Instead, the precedent must clearly state the particular rule that the plaintiff seeks to apply so that "every reasonable official" would recognize its application. *Id.*

*Land Co.*, 878 F.2d 297, 298 (9th Cir. 1989); *Yagman v. Haspel*, 769 F. App'x 484, 487 (9th Cir. 2019).

Williams contends that, after he successfully appealed the district court's summary judgment decision, it improperly denied his motion for costs, in which he sought an award of $505 for the filing fee associated with that appeal. However, the record does not show that Williams is entitled to such an award.

The fee associated with filing a notice of appeal is a taxable cost in the district court under Rule 39(e)(4). "The proper place to seek Rule 39(e) appeal costs is in the district court." *City of San Antonio v. Hotels.com, L.P.*, 959 F.3d 159, 165 (5th Cir. 2020), *aff'd*, 593 U.S. 330 (2021). When the circuit court reverses the district court's judgment, costs are taxed against the appellee pursuant to Rule 39(a)(3). If a party is awarded costs pursuant to Rule 39(a), then he "is 'entitled' to those costs—*i.e.*, has a right to obtain them and not merely to seek them—when a proper application is made in the district court." *Hotels.com*, 593 U.S. at 338.

Here, the district court denied Williams's motion for costs associated with his first appeal on the grounds that he improperly filed it in the district court and should have instead filed it in the Ninth Circuit. (2-ER-132, 136–37.) Deputy Fox recognizes that it was proper for Williams to request the filing fee award in the district court since he requested it pursuant to Rule 39(a)(3) and (e)(4). (*See* 2-ER-

136–37.)  However, for this Court to conclude that the district court should have obliged, it would have to assume, without any support in the record, that Williams has actually paid the $505 filing fee in the first place.  This is because the filing fee that was actually assessed for purposes of the first appeal was reduced and subject to the balance of Williams's prison trust account.  (2-ER-128–31.)  And, because Williams has a practice of purposely draining and keeping the balance of his account low to avoid paying fees and costs that he would otherwise be obligated to pay (4-ER-486:11–16), this Court should not assume that Williams has paid or should be awarded the $505 filing fee.

Accordingly, the Court should not direct the district court to award Williams the $505 filing fee related to his first appeal.

## CONCLUSION

For the foregoing reasons, this Court should affirm the jury's verdict and the district court's resulting judgment.

Date:  January 29, 2025

**JAN M. BENNETTS**
Ada County Prosecuting Attorney

*/s/ Aspen J. Compton-Hoyte*
Aspen J. Compton-Hoyte
Deputy Prosecuting Attorney

*/s/ Dayton P. Reed*
Dayton P. Reed
Deputy Prosecuting Attorney
*Attorneys for Appellee Landon Fox*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 22-36014

The undersigned attorney or self-represented party states the following:

○ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> The following cases, initiated by the Appellant, are currently pending in this Court and raise the same or closely related issues as those raised in this appeal to the extent the underlying cases include First Amendment petition and retaliation claims, some of which purportedly arise out of a prison grievance process:
>
> 1. No. 24-6370, Williams v. McKay, et al.
> 2. No. 24-7173, Williams v. Wheiler, et al.

**Signature** | /s/ Aspen J. Compton-Hoyte    **Date** | January 29, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**                                          *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 22-36014

I am the attorney or self-represented party.

**This brief contains** 9,969 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☒ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Aspen J. Compton-Hoyte **Date** January 29, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

**United States Constitution**

    First Amendment ............................................................... A-1

**United States Code**

    42 U.S.C. § 1983................................................................. A-2

# United States Constitution

## First Amendment

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**United States Code**

42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.