No. 22-36014

*Pro Bono*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————————————————————

KENT GLEN WILLIAMS,

*Plaintiff-Appellant,*

v.

LANDON FOX, Guard,

*Defendant-Appellee.*

———————————————————————————————

On Appeal from the U.S. District Court for the District of Idaho
No. 1:16-cv-143 (Hon. David C. Nye)

———————————————————————————————

**REPLY BRIEF OF APPELLANT
KENT GLEN WILLIAMS**

———————————————————————————————

M. PATRICK YINGLING
JOHN R. CASEY III
REED SMITH LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
Tel: (312) 207-1000
mpyingling@reedsmith.com

*Counsel for Appellant*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT.......................................................................................................5

I. This Court should vacate the judgment and remand for a new trial on Mr. Williams's right-to-petition claim. ........................................5

  A. The district court erred in determining that Deputy Fox was entitled to qualified immunity. ................................................5

    1. The district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule. ......................................................6

    2. The right to use disrespectful language in a prison/jail grievance and have it processed is clearly established. ................................................................................9

    3. Deputy Fox's alternative qualified immunity argument based on the patently unconstitutional jail policy lacks all merit. ..........................................................15

  B. The district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison/jail grievance. ...................................................17

II. This Court should vacate the judgment and remand for a new trial on Mr. Williams's written retaliation (warning of discipline) claim........................................................................................28

III. This Court should direct the district court to reimburse Mr. Williams for what he paid towards his appellate filing fee and cancel any remaining payment obligation.............................................33

CONCLUSION ........................................................................................35

STATEMENT OF RELATED CASES PURSUANT TO  CIRCUIT RULE
28-2.6 ............................................................................................37

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............................................38

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING.............................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Safeco Ins. Co.*,
    CV-09-31-BU-RKS, 2010 U.S. Dist. LEXIS 158343, at *6 (D.
    Mont. Apr. 9, 2010).................................................................................................19

*Brodheim v. Cry*,
    584 F.3d 1262 (9th Cir. 2009).................................................................*passim*

*Carey v. Nev. Gaming Control Bd.*,
    279 F.3d 873 (9th Cir. 2002)....................................................................16

*Dahne v. Richey*,
    139 S. Ct. 1531 (2019)..............................................................................14

*Gorromeo v. Zachares*,
    15 F. App'x 555 (9th Cir. 2001) ..............................................................16

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994).....................................................................16

*Hammler v. Lyons*,
    No. 1:19-cv-1650, 2020 U.S. Dist. LEXIS 261820 (E.D. Cal. Oct.
    19, 2020) .....................................................................................................1

*Landy v. Federal Aviation Admin.*,
    635 F.2d 143 (2d Cir. 1980) .....................................................................18

*Mitchell v. Gonzales*,
    No. 1:23-cv-62, 2023 U.S. Dist. LEXIS 83817 (E.D. Cal. May
    11, 2023) .....................................................................................................1

*Ortiz v. Castelo*,
  No. CV 16-6939, 2018 U.S. Dist. LEXIS 235660 (C.D. Cal.
  Aug. 1, 2018) ......................................................................................1

*Richey v. Aiyeku*,
  790 F. App'x 115 (9th Cir. 2020) ..........................................1, 14, 15

*Richey v. Dahne*,
  624 F. App'x 525 (9th Cir. 2015) ....................................1, 12, 13, 14

*United States v. Thrasher*,
  483 F.3d 977 (9th Cir. 2007) .........................................................9, 10

*Valley Hosp. Med. Ctr., Inc. v. NLRB*,
  93 F.4th 1120 (9th Cir. 2024) ................................................................6

*Williams v. Fox*,
  840 F. App'x 226 (9th Cir. 2021) ..........................................1, 6, 26

**Rules**

Fed. R. App. P. 39(e) ..............................................................33, 34

Fed. R. Civ. P. 49(a) ........................................................18, 19, 22

Fed. R. Civ. P. 49(a)(2) ....................................................................18

## INTRODUCTION

This appeal centers on undisputed facts and settled law. *On the facts*, it is undisputed that (1) Plaintiff-Appellant Kent Williams ("Mr. Williams") submitted two jail grievances to Defendant-Appellee Deputy Landon Fox ("Deputy Fox"); (2) Deputy Fox refused to process those grievances because he believed they had "disrespectful" language; and (3) Deputy Fox warned Mr. Williams of discipline if he continued to file grievances with disrespectful language. *On the law*, it is settled that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Bradley v. Hall*, 64 F.3d 1276, 1281-82 (9th Cir. 1995)).[1]

For Mr. Williams's right-to-petition claim, the district court proclaimed (after trial) that Deputy Fox was entitled to qualified immunity

---

[1] *See also Williams v. Fox*, 840 F. App'x 226, 227 (9th Cir. 2021) (same); *Richey v. Aiyeku*, 790 F. App'x 115, 116 (9th Cir. 2020) (same); *Richey v. Dahne*, 624 F. App'x 525, 525 (9th Cir. 2015) (same); *Mitchell v. Gonzales*, No. 1:23-cv-62, 2023 U.S. Dist. LEXIS 83817, at *7 (E.D. Cal. May 11, 2023) (same); *Hammler v. Lyons*, No. 1:19-cv-1650, 2020 U.S. Dist. LEXIS 261820, at *8 (E.D. Cal. Oct. 19, 2020) (same); *Ortiz v. Castelo*, No. CV 16-6939, 2018 U.S. Dist. LEXIS 235660, at *13 (C.D. Cal. Aug. 1, 2018) (same).

because, in the court's view, the right to use disrespectful language in a grievance and have it processed is not clearly established. The district court did not acknowledge this Court's earlier ruling in this case that Deputy Fox was not entitled to qualified immunity. Deputy Fox argues this was not a mandate rule violation because the district court addressed qualified immunity after a trial. Deputy Fox presumes the district court's ruling was based on *facts* decided by the jury, but it was not. The district court's qualified immunity ruling was based solely on its view of the *law*, which was contrary to the law stated by this Court.

Additionally, contrary to what Deputy Fox argues, the right to use disrespectful language in a grievance and have it processed was clearly established well before this case. Essential to this Court's earlier qualified immunity ruling was the point that the applicable law—*i.e.*, "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment," *Brodheim*, 584 F.3d at 1271—was clearly established and pertinent to Mr. Williams's right-to-petition claim.

The district court also ruled against Mr. Williams on his right-to-petition claim because the jury answered "No" to the question of whether Mr. Williams "presented a legitimate issue and sought a legitimate resolution of that issue." (2-ER-76, Question No. 9) The jury, however, lacked an understanding of the law to answer this question, because the district court refused to instruct the jury that the First Amendment protects disrespectful language in a grievance. Mr. Williams's grievances complained that jail officials had refused to process his past grievances for disrespectful language. Mr. Williams had a valid point because "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271. The jury, however, did not know this. For all the jury knew, jail officials had discretion to refuse to process a grievance for disrespectful language. But that would be a faulty understanding.

On appeal, Deputy Fox argues that Mr. Williams waived this instruction, but Deputy Fox mischaracterizes what occurred at the jury charge conference. In any event, the district court gave Mr. Williams a standing objection with respect to each of the jury instructions he proposed, including his

proposed instruction on the First Amendment protecting disrespectful language in a grievance.

In addition to a right-to-petition claim, Mr. Williams presented at trial his claim for written retaliation based on a warning of discipline. On the verdict form, the jury answered "No" to the question of whether Deputy Fox warned Mr. Williams of discipline if he continued to use disrespectful language, and the district court granted judgment to Deputy Fox on this basis. This answer, however, cannot be squared with the evidence in the record, which shows that Deputy Fox warned Mr. Williams of discipline if he continued to file grievances with disrespectful language—Deputy Fox, in fact, admitted the point on the stand at trial.

This Court should reverse the district court's judgment and remand for a new trial on Mr. Williams's right-to-petition and written retaliation (warning of discipline) claims. Also, as Deputy Fox acknowledges, the district court erred in ruling that Mr. Williams sought reimbursement of the filing fee for his prior appeal in the wrong court. Thus, this Court should order that Mr. Williams be reimbursed for what he paid towards his $505

filing fee on his prior appeal and that any remaining payment obligation relating to that filing fee be cancelled.

## ARGUMENT

**I.      This Court should vacate the judgment and remand for a new trial on Mr. Williams's right-to-petition claim.**

This Court should remand for a new trial on Mr. Williams's First Amendment right-to-petition claim because: (A) the district court erred in determining that Deputy Fox was entitled to qualified immunity; and (B) the district court erred in refusing to instruct the jury that the First Amendment protects even disrespectful language in a prison/jail grievance.

**A.      The district court erred in determining that Deputy Fox was entitled to qualified immunity.**

As explained below, (1) the district court's qualified immunity ruling was inconsistent with this Court's earlier ruling in this case and thus violated the mandate rule; (2) in any event, the right to have a prison/jail grievance processed—even when it contains disrespectful language—is clearly established; and (3) Deputy Fox's alternative qualified immunity argument based on the patently unconstitutional jail policy lacks all merit.

**1. The district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule.**

Deputy Fox does not dispute that "[t]he mandate rule jurisdictionally bars district courts and agencies from revisiting matters that this court has decided." *Valley Hosp. Med. Ctr., Inc. v. NLRB*, 93 F.4th 1120, 1125 (9th Cir. 2024). Deputy Fox also does not dispute that this Court reversed summary judgment earlier in the case because "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment" and determined that it was "error to grant summary judgment on the basis of qualified immunity." (Case No. 19-35281, 2-ER-139, *Williams v. Fox*, 840 F. App'x 226, 227 (9th Cir. 2021))

Instead, Deputy Fox contends the mandate rule does not apply because this Court's earlier qualified-immunity decision occurred before the jury engaged in fact-finding while the district court's at-issue decision occurred after the jury engaged in fact-finding. (Appellee's Brief at 35-36) Deputy Fox portrays a situation where the district court based its qualified immunity ruling on facts determined by the jury. (*See id.*) But that's incorrect.

The district court did not base its qualified immunity ruling on facts determined by the jury. The district court based its qualified immunity ruling solely on its view of *the law*—a view of the law that is contrary to how this Court expressed the law earlier in the case when it reversed the district court's summary judgment ruling.

The district court made clear that its post-trial qualified immunity ruling was *separate* from its other post-trial rulings that were "based on the jury's factfinding." (1-ER-23) In its nine-page discussion of the law for purposes of qualified immunity, *not once* did the district court reference the jury's factfinding. (1-ER-23–31) The district court's post-trial qualified immunity ruling was based solely on its (incorrect) view of *the law*. As the district court stated:

- "[T]he law is not clearly established whether a *direct* claim for violation of the right to petition the government for grievances exists or whether the only actionable right to petition a claim is an indirect claim that sounds in retaliation." (1-ER-25, emphasis in original)

- "In summary, this patchwork quilt of law addressing the right to petition versus the right to screen out frivolous petitions makes it abundantly clear that the law was not clearly established in 2016 …." (1-ER-31)

Remarkably, in discussing qualified immunity for nine pages in its post-trial ruling, the district court *never* referenced the key case that this Court relied on to reverse the district court's earlier ruling: *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (explaining that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment"). (*See* 2-ER-139, 1-ER-23–31) The district court apparently disagreed with this Court's earlier ruling that reversed summary judgment for Deputy Fox. The district court, however, was not permitted to act on that disagreement.

At bottom, despite what Deputy Fox argues on appeal, the mere fact that the district court made its qualified immunity ruling at a later stage in the case does not mean that the mandate rule does not apply. Because the district court made its decision based solely on the law (not on any factual findings), and that decision was contrary to the law articulated by this Court earlier in this case, the district court's decision violates the mandate rule. "When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its

decree, is considered as finally settled." *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (alteration in original). "The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate." *Id.* "That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.*

For these reasons, the district court's qualified immunity ruling was inconsistent with this Court's earlier ruling and thus violated the mandate rule.

> **2. The right to use disrespectful language in a prison/jail grievance and have it processed was clearly established before Deputy Fox's actions in this case.**

Although the mandate rule applies and shows the district court's error, Mr. Williams's appeal does not depend on the mandate rule. The fact remains that the right to use disrespectful language in a prison/jail grievance and have it processed was clearly established before Deputy Fox's actions in

this case, which forecloses qualified immunity for Deputy Fox on Mr. Williams's right-to-petition claim.

The district court ruled that the right to use disrespectful language in a prison/jail grievance cannot be expressed through a right-to-petition claim. (1-ER-23–31) According to the district court, the right to use disrespectful language in a prison/jail grievance can only be expressed when the right is *indirectly* violated via retaliation and not when the right is *directly* via a refusal to process a grievance for disrespectful language. (*Id.*) On appeal, Deputy Fox (tellingly) does not defend the district court's rationale. Notably, Deputy Fox does not defend the district court's improper reading of the Ninth Circuit's Model Jury Instructions (1-ER-26), Deputy Fox does not defend the district court's reliance on inapposite trial court and out-of-circuit cases (1-ER-26–29), and Deputy Fox does not defend the district court's improper analogy to the Prison Litigation Reform Act (1-ER-30). (*See* Appellee's Brief at 36-38)

Instead, Deputy Fox makes a timing argument. He asserts that "the right to use disrespectful language in a grievance and have it processed was

not clearly established *as of January 11, 2016*," the day on which Deputy Fox refused to process Mr. Williams's grievances for disrespectful language. (Appellee's Brief at 36, emphasis added) But that is incorrect. In 2009, this Court clearly established—without qualification—that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271 (citing *Bradley*, 64 F.3d at 1281-82). In fact, earlier in this very case, the question for this Court was whether the law was clearly established as of January 11, 2016, and this Court held that qualified immunity was improperly granted to Deputy Fox and that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." (2-ER-139, quoting *Brodheim*, 584 F.3d at 1271) If Deputy Fox were correct that the law was unsettled as of January 11, 2016, then this Court would have decided the qualified immunity issue differently earlier in this case. Deputy Fox, however, is not correct.

Deputy Fox contends that, on December 8, 2015, this Court showed the issue was unsettled when it wrote in a footnote that the Court was not considering in that case "whether the law in our circuit is clearly established that

'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" *Richey v. Dahne*, 624 F. App'x 525, 526 n.3 (9th Cir. 2015) (quoting *Brodheim*, 584 F.3d at 1271). Deputy Fox misconstrues *Richey v. Dahne*—a case that fully supports Mr. Williams's points on appeal.

In *Richey v. Dahne*, this Court reversed the dismissal of a prisoner's right-to-petition claim. The Court reasoned that, "'[w]e have previously held that disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" 624 F. App'x at 525 (quoting *Brodheim*, 584 F.3d at 1271). According to the Court, the plaintiff "stated a plausible claim that his rights were violated when the prison *refused to process* and investigate his grievance because it contained *'objectionable' language* describing the prison guard as 'extremely obese.'" *Id.* (emphasis added). The Court noted that the defendant, in the alternative, sought dismissal on qualified immunity grounds due to a prison policy on disrespectful language, but the Court declined to dismiss on that ground because the complaint did not allege anything about a policy. *Id.* at 526. Because of that, the Court reasoned that it did not need to address the clearly established law on disrespectful language

in a petition in order to reject the defendant's qualified immunity argument. *Id.* at 526 & n.3 ("Dahne is therefore not entitled to qualified immunity at this time. In this posture, we do not consider whether the law in our circuit is clearly established that 'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'") (quoting *Brodheim*, 584 F.3d at 1271).

Deputy Fox posits that the law was unsettled until 2018 because a defendant in 2018 *argued* that the law on disrespectful language in right-to-petition cases was unsettled, which prompted this Court to correct that defendant:

> Dahne contends that *Brodheim* clearly established only that it would be unconstitutional to punish a prisoner because of the content of a grievance, and not that it was unconstitutional to refuse the grievance because of that content. We reject this contention. The holding of *Brodheim* is not as narrow as Dahne contends.

733 F. App'x 881, 883 (9th Cir. 2018). In that 2018 case, in addressing the facts before it, the Court added that "the violation here occurred when [defendant] refused to allow the grievance to proceed through the administrative process after [the prisoner] did not rewrite it in a way that satisfied

[defendant's] sense of propriety." *Id.* Contrary to what Deputy Fox implies, the mere fact that a defendant made a meritless argument in 2018 does not mean that the law was unsettled prior to that meritless argument being made.

Deputy Fox next contends that the law is unsettled because three of the nine Supreme Court Justices dissented from the denial of a defendant's certiorari petition in *Dahne v. Richey*, 139 S. Ct. 1531 (2019), after this Court emphasized the breadth of the holding in *Brodheim*. Deputy Fox's argument is a non-starter. The Justices of the Supreme Court disagree on plenty of issues. What matters is how at least five Justices come out on an issue—and no five-justice majority of the Supreme Court has ever held that the right to use disrespectful language in a prison/jail grievance and have it processed is not clearly established.

Finally, Deputy Fox argues that *Richey v. Aiyeku*, 790 F. App'x 115 (9th Cir. 2020) shows that the law is unsettled. Contrary to what Deputy Fox argues, that 2020 case shows why the law is very much settled. In *Richey v. Aiyeku*, this Court held that "Aiyeku is not entitled to qualified immunity of

Richey's right to petition claim." *Id.* To support this holding, the Court cited its 2009 decision in *Brodheim*, where this Court stated that "'disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment.'" *Id.* (quoting *Brodheim*, 584 F.3d at 1271).

For these reasons, the right to use disrespectful language in a prison/jail grievance and have it processed is and was clearly established before Deputy Fox's actions in this case.

### 3. Deputy Fox's alternative qualified immunity argument based on the patently unconstitutional jail policy lacks all merit.

Deputy Fox seeks affirmance on an alternative ground not relied on by the district court. According to Deputy Fox, "the fact that Deputy Fox was acting pursuant to policy when he refused to accept the grievance entitled him to qualified immunity as an alternative basis for affirmance." (Appellee's Brief at 39)[2] The district court did not rely on this ground, and for good reason. No legal authority exists—and Deputy Fox cites none—supporting

---

[2] It is not clear that Deputy Fox actually intends to advance this argument—his header is titled "Deputy Fox's reliance on policy is a *non-issue*." (Appellee's Brief at 38, emphasis added)

- 15 -

the proposition a prison/jail employee is absolved of liability by claiming that he was following a patently unconstitutional policy.

As explained in the opening brief on appeal, it is well settled that a prison/jail employee may not escape liability by claiming that he was enforcing a patently unconstitutional policy. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity."); *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002) ("Although state officials who rely on statutes are generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that is patently violative of fundamental constitutional principles.") (internal quotations and citation omitted); *Gorromeo v. Zachares*, 15 F. App'x 555, 557 (9th Cir. 2001) ("Because Plaintiff alleges conduct that is patently violative of clearly established, fundamental constitutional rights, the district court did not err in denying qualified immunity, regardless of whether Defendants relied upon

statutes that purportedly authorized their conduct."). Deputy Fox does not even attempt to dispute this settled law.

The jail's policy of allowing its personnel to refuse to process grievances with disrespectful language was patently unconstitutional. The district court acknowledged this: "[S]ome of the Ada County Jail's grievance policies and customs appeared to violate clearly established law (prohibiting disrespectful language in grievances) …." (1-ER-20) The law has been clear since at least 2009 that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271.

Deputy Fox's reliance on an unconstitutional jail policy does not give him a free pass. The district court properly did not grant judgment to Deputy Fox on this basis.

**B.    The district court erred in refusing to instruct the jury that the First Amendment protects disrespectful language in a prison/jail grievance.**

The most important legal point for Mr. Williams's case is that the First Amendment protects even disrespectful language in a prison/jail grievance. In each of the two grievances at issue here, Mr. Williams grieved the fact that

jail personnel had refused to process one of his past grievances because the grievance contained disrespectful language. (4-ER-474, Trial Tr. Vol. 2 at 267:21–25; 4-ER-478, Trial Tr. Vol. 2 at 271:11–18)[3] Mr. Williams's grievances presented valid issues of constitutional dimension because, as discussed above, "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271.

Even for a Rule 49(a) special verdict form, "[t]he court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue." Fed. R. Civ. P. 49(a)(2); *see Landy v. Federal Aviation Admin.*, 635 F.2d 143, 147 (2d Cir. 1980) (reversing judgment because "[t]he factual findings necessary to support the severe penalty imposed below could not be made without reference to the applicable Aviation

---

[3] Mr. Williams, in fact, consistently notified jail officials that the refusal to process his grievances due to disrespectful language was a violation of his rights. On January 8, 2016, three days before the at-issue grievances, Mr. Williams filed a grievance stating: "Classifications to place me in segregation over an infraction they knew was illegal. They knew it was for using alleged disrespectful language in a grievance and they had to know that it is my constitutional right to do so and to punish an inmate for it is a violation of the law and my rights …." (6-ER-836; 3-ER-311–314, Trial Tr. Vol. 1 at 105:21–108:5; 4-ER-262–263, Trial Tr. Vol. 2 at 262:8–263:3)

Regulations, and the jury was not instructed as to what those regulations were. Rule 49(a) of Fed.R.Civ.P., which deals with special verdicts and interrogatories, provides that the court shall give the jury such explanation and instruction as is necessary to enable the jury to make its findings"); *Adair v. Safeco Ins. Co.*, CV-09-31-BU-RKS, 2010 U.S. Dist. LEXIS 158343, at *6 (D. Mont. Apr. 9, 2010) ("Counsel will submit instructions of *law* and the court, with their assistance will draft instructions of *law* and instruct the jury. Order, C.D.16, Federal Rule of Civil Procedure, 49(a). Counsel and the court will consider proposed special verdict forms to assist jury.") (emphasis added).

The district court, however, refused to instruct the jury on this essential aspect of Mr. Williams's case. The jury never knew that disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment. When the jury heard evidence that Mr. Williams grieved jail officials refusing to process his past grievances because those past grievances contained disrespectful language, the jury had no way of knowing that Mr. Williams was raising a valid point. For all the jury knew, jail officials have

full discretion to refuse to process a grievance for disrespectful language and

Mr. Williams's complaints about that activity lacked all merit. In fact, it is

likely the jury believed exactly that. But that understanding would be incor-

rect. The jury, accordingly, did not receive the instructions necessary to an-

swer the question of whether Mr. Williams "presented a legitimate issue and

sought a legitimate resolution of that issue." (2-ER-76, Question No. 9)

Mr. Williams requested that the district court instruct the jury on this

law. Mr. Williams's proposed instructions included the following:

- "Under the First Amendment, a pre trial detainee (any in-
  mate) has the right to file inmate grievances … and to use dis-
  respectful language …." (FER-3, ECF 156 at 2)[4]

- "Under the First Amendment, an inmate has a free expression
  right to use disrespectful or otherwise impolite language in a
  written grievance." (FER-5, ECF 156 at 4)

Also, at the jury charge conference, Mr. Williams pleaded for the dis-

trict court to instruct the jury on this law. (2-ER-83; 5-ER-644–646, Trial Tr.

Vol. 3 at 436:4–438:8). The district court, however, believed that this was a

factual question for the jury to determine and not a legal point on which the

---

[4] Further Excerpts of Record (FER) are filed with this reply brief.

jury should be instructed. (5-ER-645, Trial Tr. Vol. 3 at 437:9–15) That was an

error. Although the question of whether Deputy Fox refused to process Mr.

Williams's grievances because of disrespectful language was a fact question

for the jury,[5] the principle that the First Amendment protects disrespectful

language in a prison grievance was not a fact question for the jury. It is a

legal principle at the heart of this case. It was wrong for the district court to

rule that it was "an issue for the jury to decide." (5-ER-645, Trial Tr. Vol. 3 at

437:14–15) Courts determine the law; juries determine the facts.

Despite the clear record showing Mr. Williams's attempts to have the

district court instruct the jury on this law (2-ER-83; 5-ER-644–646, Trial Tr.

Vol. 3 at 436:4–438:8), and despite the district court's emphasis that Mr. Wil-

liams had a "standing objection" to the jury instructions (5-ER-642, Trial Tr.

Vol. 3 at 434:7–25; 5-ER-659, Vol. 3 at 451:5–7 ("You have a standing objection

---

[5] The jury answered "Yes" to this question (2-ER-76, Question No. 8) because Deputy Fox admitted that he refused to process Mr. Williams's grievances because of disrespectful language. As Deputy Fox testified upon questioning by Mr. Williams, "It doesn't matter if there was a grievable issue on it. The fact that you were cussing and saying -- calling deputies derogatory names was justification enough for me not to enter those grievances, period." (3-ER-290, Trial Tr. Vol. 1 at 84:18–21)

to any of the instructions you asked me to give that I'm not giving. That preserves them for appeal."), Deputy Fox leads with a waiver argument. Deputy Fox argues that Mr. Williams objected to the instruction he wanted. (Appellee's Brief at 28) But that's not true.

Some context is helpful to show how Deputy Fox mischaracterizes the jury charge conference as part of his waiver argument. Before trial, the district court *sua sponte* decided to use a Federal Rule of Civil Procedure 49 special verdict form instead of a general verdict form (2-ER-117), and Mr. Williams objected to use of a special verdict form (2-ER-82–94). At the charge conference, in response to Deputy Fox arguing that the jury questions should conform to the Rule 49(a) special verdict form (5-ER-633–635, Trial Tr. Vol. 3 at 425:16-427:8), Mr. Williams renewed his objection to the court using a Rule 49(a) special verdict form: "I've already made the same objection in writing that it seems like this would be more appropriate for a general verdict." (5-ER-635, Trial Tr. Vol. 3 at 427:9–11) Now, on appeal, Deputy Fox characterizes Mr. Williams's objection to the special verdict form as an objection to the instruction that Mr. Williams expressly advocated for. (Appellee's Brief at

28) But that is not accurate. By objecting to the use of the special verdict form, Mr. Williams did not give up his rights to advocate for certain instructions in the event the court decided to use the special verdict form.

Deputy Fox also points to an instruction that the district court proposed for Mr. Williams's retaliation claim: "An inmate has the right to engage in First Amendment activity, including the filing of a grievance or using language in a grievance that might be considered disrespectful." (5-ER-638, Trial Tr. Vol. 3 at 430:22-25) At the charge conference, Deputy Fox argued that the district court should omit this instruction. Mr. Williams did not agree. Mr. Williams argued that the district court should go further with this instruction:

> MR. WILLIAMS: There just seems to be no indication that it's understood that the -- the act itself is protected, the process of filing grievances.
>
> MS. WHITE (Deputy Fox's counsel): Your Honor, on a retaliation claim, the first element is that he must prove that he's engaged in a protected activity.
>
> MR. WILLIAMS: And then I guess the instruction would be the act of filing a grievance, engaging in the grievance process is, itself protected activity. In these -- in the standard jury instruction what you have to prove, that there's also the instruction where the Court -- if it's a First Amendment issue, that the Court should

in here insert "You don't need a finding for Number 1 because, under the law, this particular activity is protected," if I'm explaining that right.

THE COURT: Well, it's the second paragraph of Instruction Number 23 says right in it, "An inmate has the right to engage in First Amendment activity, including the filing of a grievance or using language in a grievance that might be considered disrespectful." It's right there.

MR. WILLIAMS: I would ask for a little more clarification, but that's – I'll move on.

(5-ER-638–639, Trial Tr. Vol. 3 at 430:6-431:2)[6]

Later in the charge conference, Mr. Williams strongly advocated for the district court to instruct the jury that the First Amendment protects even disrespectful language in a prison grievance, but the court declined:

THE COURT: You're making -- you're making good closing argument. But the issue of what the policy is is something the jury is going to determine, and then they will apply their decision to these questions. I can't possibly cover every possible scenario out there.

MR. WILLIAMS: Well, that's not every possible. It's only one question I'm asking to be included. So does the -- does the Court believe that the law does allow a guard -- *let's forget about policy, but just the law without the qualified immunity factors -- does the law*

---

[6] The district court did not provide any more clarification for the jury—instead, as Deputy Fox requested, the court omitted the instruction altogether. (6-ER-683, Trial. Tr. Vol. 4 at 474:15-18)

*allow a guard at the cell door to take a grievance and determine that there's unnecessary language in there?*

THE COURT: I'm telling you that's an issue for the jury to decide.

MR. WILLIAMS: The matter of the law on that?

THE COURT: No. Whether or not that is the policy in effect. That's what this -- that's what the Ninth Circuit said I should have given to the jury, is the -- is that type of a question. And I'm doing that. So your objection is noted, but I'm not making any changes. *Richey* covers disrespectful language; it doesn't cover legitimacy of the grievance.

MR. WILLIAMS: Absolutely. It went into great detail. Either the 2015 or the 2017 one, it says --

THE COURT: We have a difference of opinion on that. So let's --

MR. WILLIAMS: It says --

THE COURT: I'm not going to change it.

MR. WILLIAMS: Okay. But --

THE COURT: Just let it go.

MR. WILLIAMS: And I --

THE COURT: *You've got your objection to preserve it.*

(5-ER-645–646, Trial Tr. Vol. 3 at 437:2–438:8, emphasis added)

Under no plausible reading of the record did Mr. Williams waive his argument that the court should have instructed the jury that the First Amendment protects even disrespectful language in a prison grievance.

Deputy Fox also contends that Mr. Williams simply failed to understand "what the district court was trying to explain to Williams." (Appellee's Brief at 29) However, for purposes of determining whether Mr. Williams preserved his objection, the relevant issue is what *Mr. Williams* was trying to explain *to the court*—which was that the court should instruct the jury that the First Amendment protects even disrespectful language in a prison grievance.

> MR. WILLIAMS: …. It's only one question I'm asking to be included. So does the -- does the Court believe that the law does allow a guard -- let's forget about policy, but just the law without the qualified immunity factors -- does the law allow a guard at the cell door to take a grievance and determine that there's unnecessary language in there?
>
> THE COURT: I'm telling you that's an issue for the jury to decide.

(5-ER-645, Trial Tr. Vol. 3 at 437:7–15)

Deputy Fox argues that, in any event, "the [verdict] form expressly instructed the jury to ignore the language Williams used in the grievances

when it was instructed to determine whether the grievances presented a legitimate issue and sought a legitimate resolution." (Appellee's Brief at 30) To be clear, the jury question stated, "Without regard to the language Williams used in Grievance 1 and/or 2, do you find that Grievance 1 and/or 2 presented a legitimate issue and sought a legitimate resolution of that issue?" (2-ER-76, Question No. 9) Deputy Fox fails to acknowledge that telling the jury to disregard the language Williams used in Grievance 1 and/or 2 is materially different than telling the jury that the First Amendment protects even disrespectful language in a prison grievance. In Grievances 1 and 2, Mr. Williams was grieving the fact that a prison official had refused to process his past grievances due to disrespectful language in those grievance. (4-ER-474, Trial Tr. Vol. 2 at 267:21–25; 4-ER-478, Trial Tr. Vol. 2 at 271:11–18) To understand whether Mr. Williams was raising a non-frivolous issue, the jury needed to know whether the First Amendment protects disrespectful language in a prison grievance. The district court, however, declined to instruct the jury on that law.

Finally, Deputy Fox argues that "the district court acknowledged that, as a matter of law, disrespectful language in a grievance is protected by the First Amendment." (Appellee's Brief at 30, citing 2-ER-152 & 5-ER-656:24–657:13) But the district court merely acknowledged that *to the parties*—it needed to acknowledge this essential legal point *to the jury*. The jury needed that information to answer the questions on the special verdict form, especially the question of whether Mr. Williams "presented a legitimate issue and sought a legitimate resolution of that issue?" (2-ER-76, Question No. 9)

For these reasons, the district court's decision not to instruct the jury on this essential point of law was reversible error.

## II. This Court should vacate the judgment and remand for a new trial on Mr. Williams's written retaliation (warning of discipline) claim.

As Mr. Williams properly explained in his pro se supplemental appellate brief (DktEntry 49, p. 41), this Court should vacate the judgment and remand for a new trial on Mr. Williams's written retaliation claim that was based on Deputy Fox's warning of discipline.

For context, in addition to properly alleging and bringing to trial a First Amendment right-to-petition claim, Mr. Williams properly alleged and

brought to trial a First Amendment retaliation claim based on Deputy Fox's warning to discipline Mr. Williams on grounds that Mr. Williams used disrespectful language in a prison grievance (a protected activity). Mr. Williams's retaliation claim was based on Deputy Fox's written response to Mr. Williams's January 12, 2016 grievance ("Grievance 3") in which Deputy Fox wrote the following:

> The grievances you have been submitting are not acceptable. You are not grieving any issues, you are making statements and calling deputies names and being disrespectful. You have already been written up for this issue. Do not continue to abuse the grievance system.

(6-ER-839; 3-ER-315, Trial Tr. Vol. 1 at 109:6–10; 3-ER-331–332, Trial Tr. Vol. 1 at 125:20–126:5)

At trial, Deputy Fox addressed this grievance response upon questioning by Mr. Williams:

> Q. (BY MR. WILLIAMS) "The grievances you have been submitting are not acceptable. You are not grieving any issue. You are making statements and calling deputies names and being disrespectful. You have already been written up for this issue. Do not continue to abuse the grievance system."
>
> So that -- that is essentially warning me that, hey, I can get infracted for abusing the grievance system; correct?

[Deputy Fox:] Correct.

Q. And the abuse in this particular case was the disrespectful language that you rule -- the inmate handbook?

[Deputy Fox:] Correct.

(3-ER-331–332, Trial Tr. Vol. 1 at 125:20–126:5)

The district court crafted Questions 24 through 29 on the verdict form to address Mr. Williams's written retaliation claim that was based on a warning of discipline. (2-ER-79–80) Questions 24 and 25 were used as threshold questions for the jury:

> **Question No. 24:** In Fox's written response to Grievance 3, did Fox warn of, or threaten Williams with, disciplinary action if he continued to file grievances?
>
> **Question No. 25:** In Fox's written response to Grievance 3, did Fox warn of, or threaten Williams with, disciplinary action if he continued to use disrespectful language in grievances?

(*Id.*)

After these questions, the verdict form states:

> If your answers to both Questions 24 and 25 are "No," then you are done. Please sign and date the special verdict and alert the clerk. If your answer to either or both Questions 24 and 25 is "Yes," proceed to Question No. 26.

(2-ER-80)

The jury answered "No" to both Question 24 and Question 25 (2-ER-79–80), and thus the jury did not answer any of the other questions pertaining to Mr. Williams's claim. Based on the "No" answers, the district court entered judgment for Deputy Fox on this claim. (1-ER-34–36) Mr. Williams filed a post-trial motion and explained that the jury's "No" answer to Question No. 25 was not supported by the evidence. (2-ER-43) The district court denied Mr. Williams's post-trial motion, stating:

> Fox's response could be construed in the way Plaintiff suggests, as a threat of disciplinary action if Plaintiff continued to use disrespectful language in grievances, but it could also be construed in the way Defendant Fox suggests, that Plaintiff was warned not to abuse the grievance system by filing grievances with frivolous subject matter. In addition, the jury may have made a credibility determination to help answer the question.

(1-ER-16)

In his pro se appellate brief, Mr. Williams explains that the district court erred in this regard because the fact that Deputy Fox warned of discipline because of "disrespectful language" in grievances "is not a dispute." (Pro Se Supplemental Brief at 41) Mr. Williams is right. When Deputy Fox was examined about his response to Mr. Williams's grievance, he very

clearly confirmed that he was warning that Mr. Williams would be "infracted" for using "disrespectful language" in grievances:

> Q. …. So that -- that is essentially warning me that, hey, I can get infracted for abusing the grievance system; correct?
>
> [Deputy Fox:] Correct.
>
> Q. And the abuse in this particular case was the disrespectful language that you rule -- the inmate handbook?
>
> [Deputy Fox:] Correct.

(3-ER-331–332, Trial Tr. Vol. 1 at 125:25–126:5)

In his appellate brief, Deputy Fox does not even attempt to address Mr. Williams's well-founded argument. (*See generally* Appellee's Brief) That is likely because there is no question that the district court was wrong in reasoning that Deputy Fox's written response could be construed as meaning "that Plaintiff was warned not to abuse the grievance system by filing grievances *with frivolous subject matter*." (1-ER-16, emphasis added) Deputy Fox *admitted* at trial that he warned Mr. Williams that he could be "infracted" for using "disrespectful language" in grievances. (3-ER-331–332, Trial Tr. Vol. 1 at 125:25–126:5)

Because Mr. Williams is correct that, based on the evidence, it was clear error to conclude that Deputy Fox did not warn Mr. Williams of disciplinary action if he continued to use disrespectful language in grievances, this Court should vacate the judgment and remand for a new trial on Mr. Williams's retaliation claim.

**III.  This Court should direct the district court to reimburse Mr. Williams for what he paid towards his appellate filing fee and cancel any remaining payment obligation.**

Federal Rule of Appellate Procedure 39(e) provides that "[t]he following costs on appeal are taxable *in the district court* for the benefit of the party entitled to costs under this rule: … the fee for filing the notice of appeal." Fed. R. App. P. 39(e) (emphasis added). After Mr. Williams prevailed in his appeal of the summary judgment ruling, he requested that the district court grant reimbursement of his appellate filing fee (2-ER-133-37) and provided the district court with evidence that he was assessed $505 as a filing fee for his appeal (2-ER-126–131). The district court denied Mr. Williams's motion, reasoning that he "did not file his request in the appropriate court." (2-ER-

132, citing Fed. R. App. P. 39(d)(1)). The district court simply overlooked Rule 39(e), which shows Mr. Williams filed his motion in the correct court.

As Deputy Fox states on appeal, "Deputy Fox recognizes that it was proper for Williams to request the filing fee award in the district court since he requested it pursuant to Rule 39(a)(3) and (e)(4)." (Appellee's Brief at 41) Deputy Fox does not dispute that Mr. Williams is entitled to whatever he paid for his filing fee. Deputy Fox merely points out that it is unclear from the record whether Mr. Williams paid the full $505 because his filing fee was subject to a court assessment of "an initial filing fee of 20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the April 3, 2019 notice of appeal" and resumption of payments "when additional deposits are made or funds are otherwise available." (2-ER-130–131)

That it is unclear whether Mr. Williams paid the full $505 is not a reason to affirm the district court's denial of Mr. Williams's motion and excuse the district court's error. If Mr. Williams paid the full $505, then he is entitled

to have $505 reimbursed. If Mr. Williams paid only part of the $505, then he still has an obligation to pay the rest of the $505, an obligation that should be cancelled due to Mr. Williams's win on appeal and his properly filed motion in the district court. Thus, this Court should order that Mr. Williams be reimbursed for what he paid towards his appellate filing fee and that any remaining payment obligation related to that filing fee be cancelled.

## CONCLUSION

This Court should reverse the district court's judgment and remand for a new trial on Mr. Williams's right-to-petition and written retaliation (warning of discipline) claims. This Court should also order that Mr. Williams be reimbursed for what he paid towards his $505 filing fee on his prior appeal and that any remaining payment obligation related to that filing fee be cancelled.

February 19, 2025

Respectfully submitted,

*/s/ M. Patrick Yingling*

M. PATRICK YINGLING
JOHN R. CASEY III
REED SMITH LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
Tel: (312) 207-1000
mpyingling@reedsmith.com

*Counsel for Appellant*

## STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case Number(s)** 22-36014

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this court.

**Signature:** */s/ M. Patrick Yingling*    **Date:** February 19, 2025

# CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 22-36014

I am the attorney.

**This brief contains 6,970 words,** including 0 words manually counted in any visual images, and excluding the items exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature:** */s/ M. Patrick Yingling*     **Date:** February 19, 2025

# CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

**9th Cir. Case Number(s)** 22-36014

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Document(s)**

Reply Brief of Appellant Kent Glen Williams

**Signature:** */s/ M. Patrick Yingling*          **Date:** February 19, 2025